Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718

January 8, 2020

COLUMBIA CASUALTY COMPANY
STATHY DARCY
151 N. FRANKLIN STREET
CHICAGO, IL 60606

FROM:   SUMMONS DIVISION
　　　　SECRETARY OF STATE

RE:　　　CASE NO: 19-CI-01230

COURT:  Circuit Court Clerk
　　　　Franklin County, Division: I
　　　　222 St. Clair
　　　　Frankfort, KY 40602
　　　　Phone: (502) 564-8380

*Received Law Dept.*

*JAN 08 2020*

Legal action has been filed against you in the captioned case.  As provided under
Kentucky law, the legal documents are enclosed.

**Questions regarding this action should be addressed to:**

　　(1) **Your attorney, or**
　　(2) **The attorney filing this suit whose name should appear on**
　　　　**the last page of the complaint, or**
　　(3) **The court or administrative agency in which the suit is filed**
　　　　**at the clerk's number printed above.**

The Kentucky Secretary of State has NO POWER to make a legal disposition of this
case.  Your responsive pleadings should be filed with the clerk of the court or agency
where the suit is filed and served directly on your opposing party.

No copy of future pleadings need be sent to this office unless you wish us to serve
the pleading under a particular statute or rule and pay for said service.

*LP003419*

AOC-E-105    Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    Courts.ky.gov

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **19-CI-01230**
Court: **CIRCUIT**
County: **FRANKLIN**

---

*Plantiff,* **GLOBAL FITNESS HOLDINGS, LLC VS. COLUMBIA CASUALTY COMPANY,** *Defendant*

TO:  **COLUMBIA CASUALTY COMPANY**
**STATHY DARCY**
**151 N. FRANKLIN STREET**
**CHICAGO, IL 60606**

RECEIVED

JAN 0 2 2020

SECRETARY OF STATE

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Amy Feldman*

Franklin Circuit Clerk
Date: **12/3/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____ , 20 _____          _____
                                                              Served By

                                                    _____
                                                              Title

---

Summons ID: 208100614763582@00000219183
CIRCUIT: 19-CI-01230 Long Arm Statute – Secretary of State
GLOBAL FITNESS HOLDINGS, LLC VS. COLUMBIA CASUALTY COMPANY



*e*Filed

Package:000002 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000002 of 000062

Filed          19-CI-01230   12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION _____
CIVIL ACTION NO. _____
*Electronically Filed*

GLOBAL FITNESS HOLDINGS, LLC                                    **PLAINTIFF**

vs.                          **COMPLAINT AND JURY DEMAND**

COLUMBIA CASUALTY COMPANY                                    **DEFENDANTS**

      Serve through Kentucky Secretary of State:

      Stathy Darcy
      151 N. Franklin Street
      Law Department
      Chicago, IL 60606

** ** ** ** ** ** ** ** ** **

Comes Plaintiff Global Fitness Holdings, LLC ("Plaintiff" or "Global Fitness"), by counsel, and for its Complaint against Defendant Columbia Casualty Company ("Defendant" or "Columbia"), states as follows:

1. Plaintiff is a Kentucky limited liability company domiciled in Kentucky with a principle office located in Lexington, Kentucky, where it is a citizen and resident.

2. Columbia is a foreign insurance company formed under the jurisdiction of Illinois, where it is a citizen and resident, with a principle address at 151 N. Franklin Street, Chicago, IL 60606, and sells insurance in the state of Kentucky.

3. Venue is proper in Franklin County, Kentucky under KRS 304.10-200 as Defendant is a surplus lines insurer not licensed in Kentucky and has a statutorily designated service of process agent in Franklin County, Kentucky.

Package:000003 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000003 of 000062

Filed          19-CI-01230   12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Filed          19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

4. Columbia, which does business as CNA, issued to Plaintiff a Net Protect 360 insurance policy, policy no. 287464054 (the "Policy") which had a policy period of 2/1/2010 through 9/1/2011. This was a claims-made policy with cost of defense included in the limit of liability, said limit of liability being $1,000,000 maximum aggregate limit for all losses including cost of defense and claims expenses.[1]

5. Global Fitness duly paid the premium requested by Columbia for purchase of the Policy. The Policy provides that "[Columbia] shall have the right and duty to defend in the **Insured's**[2] name and on the **Insured's** behalf a **Claim** even if any of the allegations of the **Claim** are groundless, false or fraudulent." (Policy, p. 5.) "**Claim**" is defined under the Policy as:

    A. a written demand for monetary damages or non-monetary relief (including demands for injunctive or declaratory relief); or

    B. a civil adjudicatory proceeding or arbitration against an **Insured**, including any appeal therefrom alleging a **wrongful act**.

(Policy, p. 18.)

6. The Policy provides, under Section I. LIABILITY COVERAGES, Subpart A. INSURING AGREEMENTS:

    If the Insuring Agreement has been purchased, as indicated in the Declarations, the Insurer will pay on behalf of the **Insured** all sums in excess of the Deductible and up to the applicable limit of insurance that the **Insured** shall become legally obligated to pay:

    […]

    2. **Privacy Injury Liability**

        A. **Privacy Injury Claim**

        as **Damages** resulting from any **Privacy Injury Claim** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured**, or by

---

[1] A copy of the Policy is attached hereto as Exhibit 1.
[2] Global is the "Insured" under the Policy. (*See* Policy declarations pages.)

2

Package : 000004 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package:000004 of 000062

Filed                        19-CI-01230      12/03/2019          Amy Feldman, Franklin Circuit Clerk
A true copy attest      19-CI-01230      12/03/2019          /s/Amy Feldman, Franklin Circuit Clerk

someone for whose **Wrongful Act** the **Insured** is legally responsible . . . .

[…]

Subject to the limits of insurance and in excess of any deductible, the Insurer will also pay all **Claim Expenses** in connection with any **Claim**.

(Policy, pp. 1-2.)

"**Wrongful Act**" is defined to include "any **Privacy Injury** committed by an **Insured**...." (*Id.* at p. 25.) "**Privacy Injury**" is defined to include "any act or omission with respect to **Nonpublic Personal Information** . . . in violation of any federal, state or other law or regulation, whether domestic or foreign, prohibiting unfair methods of competition, unfair or deceptive trade practices, or consumer fraud." (*Id.* at p. 23.)

"**Nonpublic Personal Information**" is defined as "information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories." (*Id.*)

7.  The Policy provides that "Claim Expenses reduce the limit of insurance and are subject to the deductible." (*Id.* at p. 1) (capitalization omitted). The Policy defines "**Claim Expenses**" as follows:

> A.      fees charged by attorneys designated by the Insurer or by the **Insured Entity** with the Insurer's advance written consent; and
> B.      all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** if incurred by the Insurer . . . .

(*Id.* at p. 18.)

### The Claims

8.  Global Fitness hereby incorporates all allegations asserted in the preceding paragraphs.

3

Filed                        19-CI-01230      12/03/2019          Amy Feldman, Franklin Circuit Clerk
A true copy attest      19-CI-01230      12/03/2019          /s/Amy Feldman, Franklin Circuit Clerk

Package:000005 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000005 of 000062

Filed          19-CI-01230   12/03/2019       Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019       /s/Amy Feldman, Franklin Circuit Clerk

9. On or about April 13, 2011, a class action lawsuit was filed against Global Fitness alleging claims that Global Fitness did the following:

- Engaged in common policy and practice of overcharging members' (bank) accounts and making unlawful and unauthorized charges to the accounts of its members.

- Making deductions referred to as "late payments" from the bank accounts of members in the amount of twenty dollars ($20) that was never authorized in any contract signed with Global Fitness.

- Charging excessive cancellation fees for canceling memberships which excessive cancellation fees were outside and more than anything that was authorized by any contract.

- That Global Fitness improperly deducted payments from the credit account of a member without her authorization, permission or contract after she had forwarded the cancellation and ten dollar ($10) fee for cancellation.

- That Global Fitness also engaged in common practice of overcharging members' accounts and making unlawful and unauthorized charges to the bank accounts of its members outside of and without any contractual right to do so.

- That Global Fitness and the class members agreed to permit Global Fitness to deduct money from their accounts according to the terms the agreements and purported contracts. No further amounts should have been deducted. Contrary to the agreement, Defendant deducted money from the accounts of Plaintiff and class members without any basis in the contracts or any agreement from Plaintiffs or class members.

- That Global Fitness, by and through the unauthorized, improper deductions without contractual right, from the bank accounts of the Plaintiffs, were taken outside the terms of

4

Package:000006 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000006 of 000062

Filed          19-CI-01230   12/03/2019       Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019       /s/Amy Feldman, Franklin Circuit Clerk

Filed                    19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

their contracts and/or their contracts have terminated and that constitutes the conversion of property.

- That Global Fitness misrepresented the total cost of the memberships, before any contract was entered into, that Global Fitness failed to disclose all "hidden" fees and misrepresented the terms and conditions of cancellations, all done before any contract was entered into with the Plaintiffs and the Plaintiffs sought damages for unjust enrichment, false, deceptive and unconscionable consumer practices violative of state Consumer Sales Practices Act. They also sought injunctive as well as monetary relief. Other class actions, of a similar nature, were also filed against Global Fitness, of which Global fitness duly and timely notified Columbia. These actions all comprise "The Claims."[3]

10. By letter dated May 23, 2011, Antonio Trotta, claims consulting director for CNA, sent a letter to Plaintiff on behalf of Defendant, in which Trotta acknowledged that The Claims "conceivably fall within the definition of a 'Privacy Injury,' and therefore the Policy's duty to defend the claim has been triggered."[4]

11. Global Fitness was required to hire attorneys and to incur legal bills and costs, as well as Claim Expenses, and to pay funds related to the resolution of The Claims, all directly in relation to The Claims, which alleged practices and liabilities and obligations that would have rendered Global Fitness liable if proven.

12. On October 11, 2019, Suzanne Giordano of CNA sent a letter to Plaintiff on behalf of Defendant, in which Giordano declined to pay legal bills incurred in the defense of The Claims

---

[3] "The Claims" is intended to include, but not be limited to, the class action filed in the Common Pleas Court of Ohio, Franklin County, Case No. 11CV-04-4697, styled *Amber Gascho, et al. v. Global Fitness Holdings, LLC.*
[4] A copy of this letter is attached hereto as Exhibit 2.

Filed                    19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Package:000007 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000007 of 000062

Filed                        19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

submitted by the law firm of Greenbaum Doll & McDonald (later renamed Bingham Greenbaum Doll, LLP) ("Greenbaum").[5]

13. As part of the defense and litigation of The Claims, Plaintiff incurred Claim Expenses, including those which Plaintiff paid to Kroll Ontrack in conjunction with discovery/data services. In her October 11, 2019 letter, Giordano does not agree to cover the Kroll Ontrack Claim Expenses, which total approximately $855,405.60, but asserts that the invoices "lack [] detail . . . ." (Ex. 3, p. 4.) Giordano also complains about the age of the bills, but cites no Policy provisions supporting either of these assertions. To date, Columbia has not agreed to cover the Kroll Ontrack Claim Expenses.

14. As a direct result of The Claims, Plaintiff had to expend funds to resolve litigation related to same, and Defendant has a contractual obligation to indemnify Plaintiff with respect to The Claims.

15. Defendant's refusal to provide coverage (including, but not limited to, indemnity, defense costs of Greenbaum, and Claim Expenses of Kroll Ontrack) was wrongful, in violation of the duty of good faith owed by Defendant to Plaintiff, was done with an inadequate investigation into the facts, showed a reckless indifference to the rights of Plaintiff, and constitutes outrageous conduct in that Defendant did not provide indemnity, a complete defense to Plaintiff, or pay Plaintiff's Claim Expenses (all of which the Policy obligates Defendant to do).

16. Plaintiff was forced to expend sums of money to resolve The Claims, as well as for defense costs and Claim Expenses, all of which are and should have been covered by the Columbia policy, and which exceeded the policy limits of $1,000,000 (after any deductible/retention),

---

[5] A copy of this letter is attached hereto as Exhibit 3.

6

Filed             19-CI-01230   12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk

including, but not limited to, those mentioned above, as well as sums of money for resolution of The Claims.

### Count I: Declaration of Rights

17. Global Fitness hereby incorporates all allegations asserted in the preceding paragraphs.

18. An actual controversy exists with respect to the Policy between Global Fitness and Columbia concerning Columbia's obligation to indemnify and defend Global Fitness for The Claims and Claim Expenses, including paying Greenbaum's legal bills and the Claim Expenses of Kroll Ontrack, as well as indemnifying Plaintiff with respect to The Claims.

19. An actual controversy exists with respect to the other coverages purchased by Global Fitness under the Policy with Columbia.

20. Columbia has waived its alleged coverage and policy defenses, and/or should be estopped from asserting its alleged coverage and policy defenses, by failing to notify Global Fitness of any such alleged defenses within a reasonable time.

21. The issuance of a declaration of rights will resolve the controversy between the parties to the Policy related to insurance coverage for The Claims. Global Fitness, as an insured under the Policy, is entitled to a declaration of rights under KRS 418.045.

### Count II: Performance of the Contract and Breach of Contract

22. Global Fitness hereby incorporates all allegations asserted in the preceding paragraphs.

23. According to the terms of the Policy, Columbia is required to indemnify Plaintiff and pay for the defense of The Claims and Claim Expenses.

24. Columbia should be required to perform under the Policy and indemnify Plaintiff and pay for the defense and Claim Expenses incurred as a result of The Claims.

25. Columbia has breached its Policy by not agreeing to provide coverage – indemnity and defense.

Package:000009 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000009 of 000062

7

Filed             19-CI-01230   12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk

Filed            19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

26. Global Fitness has and will continue to be damaged by Columbia's breach of contract.

27. As a result of Columbia's failure to perform under the Policy and Columbia's breach of contract, Global Fitness has suffered damages covered by the Policy, as well as consequential damages, including, but not limited to, indemnity for The Claims and payment of defense costs and litigation expenses (including, but not limited to, Greenbaum's legal fees and expenses), and Claim Expenses (including, but not limited to, those paid to Kroll Ontrack).

### Count III: Violation of the Unfair Claims Settlement Practices Act

28. Global Fitness hereby incorporates all allegations asserted in the preceding paragraphs.

29. Columbia has a duty to act in good faith and deal fairly with Global Fitness.

30. Columbia has violated the Unfair Claims Settlement Practices Act (hereinafter "UCSPA") as set forth in KRS 304.12-230, because Columbia has (i) misrepresented pertinent facts or insurance policy provisions relating to coverages at issue; (ii) failed to acknowledge and act reasonably promptly upon communications with respect to a claim arising under the Policy; (iii) failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (iv) refused to pay claims without conducting a reasonable investigation based upon all available information; (v) did not attempt in good-faith to effectuate prompt, fair, and equitable settlement of claims for defense costs and any indemnity costs when such obligation to indemnify Plaintiff and pay for costs had become reasonably clear; (vi) compelled Plaintiff to institute litigation to recover amounts due under the Policy; and (vii) failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts and applicable law for refusal to pay under the Policy.

Filed            19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Filed          19-CI-01230   12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

31. As a direct and proximate result of the aforesaid unfair, deceptive, and intentional acts of Columbia, Global Fitness has suffered inconvenience and financial damages, all in an amount in excess of the jurisdictional limits of this Court.

32. Columbia has continued to violate provisions of the UCSPA, as set forth in KRS 304.12-230, continuing throughout this Action.

33. Columbia has violated KRS 304.12-235, which entitles Global Fitness to recover attorney's fees, costs, and interest.

34. Global Fitness is entitled to recover punitive damages against Columbia for its violations of the UCSPA.

## Count IV – Bad Faith

35. Global Fitness hereby incorporates all allegations asserted in the preceding paragraphs.

36. The aforesaid conduct of Columbia constitutes bad faith and a breach of its duty to act in good faith and to deal fairly with Global Fitness as provided by common law.

37. As a direct and proximate result of Columbia's bad faith, Global Fitness has been damaged as set forth above in this Complaint.

38. Columbia lacked a reasonable basis for its attempts to not provide coverage and knew there was no reasonable basis for such position, and acted with reckless disregard for whether such a basis existed.

39. Global Fitness is entitled to recover punitive damages because Columbia has acted towards Global Fitness with reckless disregard for its rights, and with gross negligence.

WHEREFORE, Global Fitness hereby demands judgment against Columbia as follows:

A. A declaration of rights that: the Policy provides indemnity coverage with respect to The Claims, as well as defense costs coverage, i.e. coverage for all legal bills incurred by Plaintiff

9

Filed                    19-CI-01230      12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest       19-CI-01230      12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

in defending against The Claims, including, but not limited to, the legal bills and litigation

expenses of Greenbaum;  the Policy provides coverage for all Claim Expenses, including, but

not limited to, the Kroll Ontrack bills; Columbia should have indemnified Plaintiff and paid

the aforementioned legal bills and Claim Expenses under the terms of the Policy;

B.  Judgment for performance under and breach of the Policy, worry, inconvenience, financial

damages, statutory interest at 12%, attorney's fees, and any and all other damages caused by

Columbia for violation of the Unfair Claims Settlement Practices Act, KRS 304.12-235,

common law bad faith, and other laws;

C.  Judgment against Columbia for punitive damages;

D.  Trial by jury; and

E.  All other relief to which Plaintiff appears entitled.


Respectfully submitted,

/s/ *M. Austin Mehr*
M. AUSTIN MEHR
PHILIP G. FAIRBANKS
**Mehr, Fairbanks & Peterson**
**Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email: amehr@austinmehr.com
Email: pgf@austinmehr.com
*Attorneys for Plaintiff*

10

Filed                    19-CI-01230      12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest       19-CI-01230      12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Package:000012 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000012 of 000062

Filed          19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

# EXHIBIT

# 1

Package:000013 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000013 of 000062

Filed          19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Filed        19-CI-01230   12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk



This insurance has been placed with an insurer not licensed to transact business in the Commonwealth of Kentucky but eligible as a surplus lines insurer. The insurer is not a member of the Kentucky Insurance Guaranty Association. Should the insurer become insolvent, the protection and benefits of the Kentucky Insurance Guaranty Association are not available.

**Net Protect 360℠**

**NOTICE:**

WITH RESPECT TO THE LIABILITY COVERAGES, THIS IS A CLAIMS-MADE POLICY AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, AN EXTENDED REPORTING PERIOD APPLIES. CLAIM EXPENSES REDUCE THE LIMIT OF INSURANCE AND ARE SUBJECT TO THE DEDUCTIBLE.

PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER.

Terms in bold face type have a special meaning. See the definitions section of this Policy.

**Item 1.**

**Named Insured**
Global Fitness Holdings, Llc
1056 Wellington Way Suite 200
Lexington, KY 40513

**Customer Number** 494909   **Policy Number** 287494054

**Producer**
Cincinnati Intermediaries Inc.
3975 Erie Ave
Cincinnati, OH 45208

**Insurer**
Columbia Casualty Company
333 S. Wabash Ave.
Chicago, IL 60604

**Item 2.  Policy Period**

Inception Date: 2/1/2010          Expiration Date: 9/1/2011

(both of which at 12.01 a.m. standard time at the address stated in Item 1, above)

**Item 3.  Coverage Schedule:**
Coverage under this policy is provided only for those coverages for which a limit of insurance appears below. If no Limit of Insurance is shown for a coverage, such coverage is not provided by this policy. The Policy Aggregate Limit of Insurance shown in a. below is the most the Insurer will pay regardless of the number of coverages purchased.

| | Each Claim or Proceeding | In the Aggregate | Deductible or Coinsurance, Each Occurrence | Prior Acts Date |
|---|---|---|---|---|
| **A. Aggregate Limit of Insurance** | $1,000,000 in the Aggregate | | All Damages, Claim Expenses, Public Relations Event Expenses and First Party Loss under all Coverages | |
| **B. Liability Coverages** | | | | |
| 1. Content Injury Liability | $N/A | | $N/A | No Prior Acts |
| 2. Privacy Injury Liability | $N/A | | $N/A | No Prior Acts |
| • Privacy Injury Claims | $1,000,000 | $1,000,000 all Claims in the Aggregate. | $50,000 | 2/1/2010 |
| • Privacy Regulation Proceeding | $1,000,000 | | $50,000 | No Prior Acts |
| 3. Professional Services Liability | $N/A | | $N/A | No Prior Acts |
| 4. Network Security Liability | $1,000,000 | | $50,000 | 2/1/2010 |
| 5. Public Relations Event Expenses | $N/A | $250,000 All Public relations Event Expenses | $N/A 0% Coinsurance | No Prior Acts |

GSL-1335XXc (Ed 1-07)    © CNA All Rights Reserved.    Page 1
19-CI-01230   12/03/2019   Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019   /s/Amy Feldman, Franklin Circuit Clerk

Filed              19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

| C.  First Party Coverages | Each Occurrence | In the Aggregate | Deductible or Coinsurance, Each Occurrence | Prior Acts Date |
|---|---|---|---|---|
| 1.  Network Extortion | $N/A | $N/A All First Party Loss in the Aggregate | $N/A | $N/A |
| 2.  Loss of or Damage to Insured Entity's Network | $N/A | | $N/A | $N/A |
| 3.  Business Interruption and Extra Expense | $N/A Agreed Value per Hour | | Waiting Period: $N/A Hours<br><br>Extra Expense: $N/A | $N/A |
| 4.  Emergency Response Fund | $N/A | $N/A All Emergency Response Fund Expenses in the Aggregate | $N/A<br><br>0% Coinsurance | $N/A |
| 5.  Basic Electronic Theft | $N/A | | $N/A | $NA |
| 6.  Electronic Theft of Services | $N/A | | $N/A | $N/A |
| 7.  Electronic Theft of Intangible Property | $N/A | | $N/A | $N/A |

**Item 4.**   Sublimits

Third Party Custodian Privacy Injury Sublimit          $1,000,000 in the Aggregate

Dependent Occurrence Sublimit                    $N/A in the Aggregate

**Item 5.**   Policy Premium                        $26,205

**Item 6.**   Claim Notices to Insurer:           All other notices:
CNA Global Specialty Lines                  CNA Global Specialty Lines
Address:                            Address:
40 Wall Street New York, NY 10005
Attention: GSL Claims Intake Coordinator
Netprotect Claims Hotline: (631) 912-7260

**Item 7.**   Endorsements forming a part of this Policy at issuance:

| | | |
|---|---|---|
| G-145126-A | 08/2003 | OFAC New Policyholder Notice |
| GSL-1099-XX | 01/2008 | Exclusion Of Certified Acts Of Terrorism |
| GSL-15557-XXC | 10/2009 | Public Relations Event Expense Amendatory Endorsement |
| GSL-1339-XX | 02/2007 | MINIMUM REQUIRED PRACTICES ENDORSEMENT |
| GSL-8786-XX | 10/2007 | THIRD PARTY CUSTODIAN PRIVACY INJURY VARIABLE SUBLIMIT |
| GSL-15557-XXC | 05/2010 | Public Relations Event Expense Amendatory Endorsement |
| GSL-4019-XX | 08/2008 | Service of Suit |

GSL -1335XXc (Ed 1-07)                                          Page 2

Filed              19-CI-01230    12/03/2019 © CNA All Rights Reserved. Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019              /s/Amy Feldman, Franklin Circuit Clerk

Package :000015 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000015 of 000062

Filed          19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk



Net Protect 360$^{SM}$

These Declarations, along with the completed and signed **Application**, the Policy, and any written endorsements attached shall constitute the contract between the **Insureds** and the Insurer.

Authorized Representative :       *John S. Wenzler*

Date:                             10/18/2010

Package:000016 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000016 of 000062

Filed          19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Filed                19-CI-01230    12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230    12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

**NOTICE:**

**WITH RESPECT TO THE LIABILITY COVERAGES, THIS IS A CLAIMS-MADE POLICY AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, AN EXTENDED REPORTING PERIOD APPLIES. CLAIM EXPENSES REDUCE THE LIMIT OF INSURANCE AND ARE SUBJECT TO THE DEDUCTIBLE.**

**PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the premiums paid and in reliance upon all statements made in the **Application** furnished to the Insurer designated in the Declarations, a stock insurance corporation, hereinafter called the "Insurer", the Insurer and the **Insureds** agree as follows:

**I.   LIABILITY COVERAGES**

  **A.  INSURING AGREEMENTS**

    If the Insuring Agreement has been purchased, as indicated in the Declarations, the Insurer will pay on behalf of the **Insured** all sums in excess of the Deductible and up to the applicable limit of insurance that the **Insured** shall become legally obligated to pay:

    **1.  Content Injury Liability**

      as **Damages** resulting from any **Content Injury Claim** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured**, or by someone for whose **Wrongful Act** the **Insured** is legally responsible;

    **2.  Privacy Injury Liability**

      **A.  Privacy Injury Claim**

        as **Damages** resulting from any **Privacy Injury Claim** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured**, or by someone for whose **Wrongful Act** the **Insured** is legally responsible;

      **B.  Privacy Regulation Proceeding**

        as **Damages** and **Claim Expenses** resulting from any **Privacy Regulation Proceeding** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured** or by someone for whose **Wrongful Act** the **Insured** is legally responsible;

    **3.  Professional Services Liability**

      as **Damages** resulting from any **Professional Services Claim** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured**, or by someone for whose **Wrongful Act** the **Insured** is legally responsible;

    **4.  Network Security Liability**

      as **Damages** resulting from any **Network Security Claim** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured**, or by someone for whose **Wrongful Act** the **Insured** is legally responsible;

1

G-147051-A
ED. 1 07

© CNA All Rights Reserved

Package:000017 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000017 of 000062

Filed                    19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest       19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

provided that, with respect to paragraphs **1.** through **4.** above:

1. prior to the inception date of this policy or the first such policy issued and continuously renewed by the Insurer, whichever is earlier;
   A. no **Executive** had knowledge of or could have reasonably foreseen any circumstances which might have resulted in a **Claim**; and
   B. the **Wrongful Act** or any **Interrelated Wrongful Act** has not been the subject of any notice given under any prior policy; and,
2. the **Wrongful Act** occurred on or after the applicable **Prior Acts Date** for each **Insuring Agreement** as set forth in the Declarations, in Item 3. Coverage Schedule, and prior to the end of the **Policy Period**.

Subject to the limits of insurance and in excess of any deductible, the Insurer will also pay all **Claim Expenses** in connection with any **Claim**.

**B. Public Relations Event Expense Reimbursement**

If **Public Relations Event Expense** Reimbursement coverage has been purchased, as indicated in the Declarations, the Insurer will reimburse the **Insured Entity** for **Public Relations Event Expenses** (up to the **Public Relations Event Expenses** limit of insurance and in excess of the **Public Relations Event Expenses** deductible) which amounts are incurred within twelve months of the date that the **Insured** reports the **Public Relations Event**, and which amounts are consented to by the Insurer (such consent not to be unreasonably withheld):

1. to respond to adverse or unfavorable publicity or media attention arising out of a **Public Relations Event**;
2. to effect compliance with:
   a. a Security Breach Notice Law; or
   b. any statute or regulation referenced under the definition of **Privacy Injury** where the **Insured Entity** has been notified that an **Insured** may be non-compliant with any such statute or regulation; or
3. to implement credit monitoring of changes to credit bureau records associated with any individual whose **Non-public Personal Information** may have been disclosed or used in an unauthorized manner while in **Insured Entity's** care and custody.

**II. FIRST PARTY INSURING AGREEMENTS**

Subject always to Section VIII, Conditions, Paragraph W, Proof, Valuation and Payment of **First Party Loss,** if the Insuring Agreement has been purchased, as indicated in the Declarations, the Insurer will pay the **Insured Entity** all sums in excess of any applicable Deductible and up to the applicable limit of insurance that the **Insured Entity** incurs:

**A. Network Extortion**

for **Network Extortion Expense** resulting from a **Network Extortion** that occurs during the **Policy Period**;

**B. Loss of or Damage to Insured Entity's Network**

for the **Insured Entity's** reasonable and necessary expenses resulting from an **Exploit** that occurs during the **Policy Period,** that are required to restore the **Insured Entity's Network** or information residing on the **Insured Entity's Network** to substantially the form in which it existed immediately prior to such **Exploit;**

**C. Business Interruption and Extra Expense**

1. for reduction of business income the **Insured Entity** sustains during a **Period of Restoration** due to the interruption of **Commerce Operations** by a **Network Impairment** that has been caused by an **Exploit** during the **Policy Period**; and,
2. for Extra Expense that the Insured Entity sustains to minimize any such Network Impairment in order to resume Commerce Operations;

2

Package : 000018 of 000062   Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)   Package : 000018 of 000062

Filed          19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

Package:000019 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000019 of 000062

**D. Emergency Response Fund**

for the **Insured Entity's** reasonable and actual expenses resulting from an **Exploit**, an **Electronic Theft** or a **Network Extortion** that occurs during the **Policy Period** in engaging a suitably qualified third party security expert to:

1. assist the **Insured** in investigating, stopping, or minimizing damage due to such **Exploit**, **Electronic Theft** or **Network Extortion** while such **Exploit**, **Electronic Theft** or **Network Extortion** is ongoing; or
2. collecting and analyzing and preserving forensic evidence of such **Exploit**, **Electronic Theft** or **Network Extortion** for use in identifying the perpetrator and in supporting legal action against the perpetrator;

**E. Basic Electronic Theft**

for

1. loss of the **Insured Entity's Money** or **Securities**, including loss resulting from alteration; or
2. loss of the **Insured Entity's Goods**,

resulting from **Electronic Theft** of the **Insured Entity's Money**, **Securities** or **Goods** perpetrated directly against the **Insured Entity** by an **External Source** during the **Policy Period**;

**F. Electronic Theft of Services**

for loss of the **Insured Entity's Services** resulting from **Electronic Theft** of such **Services** perpetrated directly against the **Insured Entity** by an **External Source** during the **Policy Period**;

**G. Electronic Theft of Intangible Property**

for loss of the **Insured Entity's Intangible Property** resulting from an **Electronic Theft** of such **Intangible Property** perpetrated directly against the **Insured Entity** during the **Policy Period**.

**III. LIMITS OF INSURANCE AND DEDUCTIBLES**

**A. Policy Aggregate**

The amount set forth as the Policy Aggregate Limit of insurance in Item 3.A. in the Declarations shall be the maximum aggregate limit of insurance of the Insurer for all **Damages** and **Claims Expenses**, all **Public Relations Event Expenses** and all **First Party Loss** under this Policy, regardless of the number of **Occurrences**, **Insureds**, **Claims** made, or persons or entities bringing such **Claims**. The Scheduled Limits of Insurance set forth in the Coverage Schedule in the Declarations are sub-limits which further limit and do not increase the Insurer's limit of insurance under this Policy Aggregate Limit. The limits of insurance set forth in paragraphs B, C, D, and E below are subject always to this Policy Aggregate.

**B. Liability Limits of Insurance**

**1. Related Claims and Related Public Relations Events**

a. More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed to have been first made on the earlier of:
   i.  the date on which the earliest such **Claim** was first made; or
   ii. the first date valid notice was given by the **Insureds** to the Insurer under this Policy of any **Wrongful Act** or under any prior policy of any **Wrongful Act** or any fact, circumstance, situation, event or transaction which underlies any such **Claim**.

b. More than one **Public Relations Event** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Public Relations Event** which shall be subject to the **Public Relations Event** Limit applicable to the earliest such **Public Relations Event** reported to the Insurer under this Policy or under any prior policy.

G-14 7051-A
ED. 1 07

Filed          19-CI-01230    12/03/2019      © CNA All Rights Reserved.    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Filed         19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

**2. Each Claim**

Subject to the applicable **Claims Aggregate**, a separate "**Each Claim limit**" applies to each Liability Insuring Agreement in the amounts and as set forth in Item 3.B. of the Coverage Schedule in the Declarations . Such amounts are the limits of insurance for all **Damages** and **Claim Expenses** for each separate **Claim** as set forth therein.

**3. All Claims in the Aggregate**

The amounts set forth in the Declarations, in Item 3.B. of the Coverage Schedule, is the limit of insurance for all **Damages** and **Claim Expenses** for all **Claims** combined.

**4. All Public Relations Event Expenses in the Aggregate**

The amount set forth in the Declarations in Item 3.B. of the Coverage Schedule is the limit of insurance for all **Public Relations Event Expenses** for all **Public Relations Events**.

**C. First Party Limits of Insurance**

**1. Each Occurrence**

Subject to the applicable **Occurrences Aggregate Limit**, a separate "**Each Occurrence limit**" applies to each First Party Insuring Agreement in the amounts and as set forth in Item 3.C. of the Coverage Schedule.

**2. All Occurrences in the Aggregate**

The amounts set forth in the Declarations, in Item 3.C. of the Coverage Schedule, is the limit of insurance for all **Occurrences** combined, provided however that the most the Insurer will pay in the aggregate for **Occurrences** resulting from failure of any third party service provider on whom the **Insured** relies, is the Dependent **Occurrence** Sub limit of insurance listed in the Policy Declarations, item 4.

**3. All Emergency Response Fund Expenses in the Aggregate**

The amount set forth in the Declarations in Item 3.C.  of the Coverage Schedule is the aggregate limit of insurance for all covered expenses under Insuring Agreement II D,  **Emergency Response Fund.**

**D. Deductibles**

**1. Common Provision**

The deductibles shall be uninsured. The Insurer will have no obligation to pay all or any portion of any applicable deductible. In the event more than one deductible applies to any **Claim** or to any **Occurrence**, the maximum total deductible amount applicable to such **Claim** or such **Occurrence** shall be the highest of such applicable deductibles.

**2. Liability Deductibles**

**a. Liability Insuring Agreement Deductibles**

A separate deductible applies to each Insuring Agreement in the amount and as indicated in Item 3.B.of the Coverage Schedule in the Declarations. The Insurer shall only be liable for the amount of **Damages** and **Claim Expenses** arising from each **Claim** which is in excess of the applicable deductible amounts.

**b. Public Relations Event Expenses Reimbursement Deductible**

G-147051-A
(ED. 1 07

4

© CNA All Rights Reserved.

19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

Package 000020 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000020 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



NetProtect 360℠

The Insurer shall only be liable for reimbursement of reasonable and necessary fees, costs and expenses arising from all **Public Relations Events** in excess of the **Public Relations Event Expenses** deductible amount stated in Item 3.B. of the Coverage Schedule in the Declarations.

**3. Occurrence Deductibles**

A separate deductible applies to each **Occurrence** under each First Party Insuring Agreement in the amount and as specified in Item 3.C.of the Coverage Schedule in the Declarations. The Insurer shall only be liable for the amount of **First Party Loss** which is in excess of the applicable deductible amounts.

**E. Coinsurance**

Solely with respect to all **Loss** (excess of the applicable Deductible) in connection with any **Claim** or **Occurrence**, the **Insured Entity** shall bear uninsured and at its own risk the percentage of all such **Loss** as a Coinsurance percentage in the amount and as specified in the Declarations. This percentage shall be applied to all **Loss** on account of all such **Claims** or **Occurrences**. The Insurer's liability shall apply only to the remaining percent of all such **Loss**.

## IV. LIABILITY COVERAGES - DUTY TO DEFEND AND SETTLEMENT

**A. Defense**

The Insurer shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **Claim** even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Insurer has the right to make such investigation and conduct negotiations and enter into such settlement of any **Claim** as the Insurer deems necessary.

**B. Consent to Settlement**

The Insurer shall not settle any **Claim** without the prior written consent of the **Named Insured**. If however, the **Named Insured** refuses to consent to such settlement or compromise recommended by the Insurer and agreed to by the claimant, the Insurer's duty to defend shall then cease and the **Named Insured** shall thereafter at the **Named Insured's** own expense negotiate or defend such **Claim** independently of the Insurer, and the Insurer's liability shall be limited to the amount of **Damages** for which the **Claim** could have been settled, if such recommendation was consented to, and for all **Claim Expenses** incurred up to the time of such refusal.

**C. Exhaustion of Limits**

The Insurer shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **Claim** after the applicable limit of insurance has been exhausted by payment of **Damages** or **Claim Expenses**, or any combination thereof. In such case, the Insurer shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of said investigation, defense or settlement of the **Claim** to the **Insured**.

## V. COMMON EXCLUSIONS

Whether in connection with any First Party Coverage or any Liability Coverage, the Insurer shall not be liable to pay any **Loss**:

**A. War**

based upon, directly or indirectly arising out of, or in any way involving:
1. war, including undeclared or civil war;
2. warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

5

G-147051-A
ED. 1 07

© CNA All Rights Reserved.

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package:000021 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000021 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



NetProtect 360℠

3. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

**B. Interruptions**

based upon, directly or indirectly arising out of, or in any way involving any:
1. **Telecommunications Services Provider** interruptions;
2. interruptions in leased, managed or hosted services provided by another including but not limited to: Application Service Providers, Managed Security Providers, hosting service providers or any similar service;
3. partial or total electrical failure including electrical power interruption, surge, brownout or blackout; or interruptions or outages to any other utilities or elements of infrastructure, including gas, water, telephone (on-line, wireless or other), cable or satellite services, unless such utilities or elements of infrastructure were under the sole operational control of the **Insured Entity**.
including (but not limited to) planned outages or reductions in service involving items identified in subsections **1.** through **3.** above;

**C. Pollution**

based upon, directly or indirectly arising out of, or in any way involving: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**; any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; any action by or on behalf of any governmental authority, domestic or foreign, for damages arising out of the testing of, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing or assessing the effects of **Pollutants** or any nuclear reaction, radiation or contamination; or any actual or alleged **Property Damage**, or **Bodily Injury**, sickness, disease or death of any person, or financial loss to **Insured Entity**, their security holders, or their creditors resulting from any of the aforementioned matters;

**D. Securities/Management Liability**

based upon, directly or indirectly arising out of, or in any way involving:
1. the filing of any registration statement under the Securities Acts of 1933, or the Securities Exchange Act of 1934, any State Blue Sky Law, or any other state or local securities law; or
2. the Securities Act of 1933, the Securities and Exchange Act of 1934, rules or regulations of the Securities Exchange Commission under either or both acts, similar securities laws or regulations of state, or any laws of any state relating to any transaction arising out of, involving, or relating to the public offering of securities;
3. any breach of any duty which an **Executive** owes to a corporation or other legal entity for which such **Executive** serves or by which he is employed;

**E. Claims by Governmental Agency**

involving, by, on behalf of, or for the benefit of any federal, state or local government agency, whether domestic or foreign, including but not limited to the Federal Trade Commission or the Federal Communications Commission. Provided, however, this exclusion shall not apply to:
1. **Claims** under the Professional Liability Coverage grant in the Liability Coverage Part for a **Wrongful Act** (as defined with respect to the Professional Liability Coverage) committed by the **Insured** in performing **Professional Services** for a government agency which is a direct customer of the **Insured**;

2. **Privacy Regulation Proceedings**;

**F. Licensing Organization**

involving, by, or on behalf, of or for the benefit of any licensing organization, including but not limited to ASCAP, SESAC, or BMI;

6

G-147051-A
Ed. 2/07

© CNA All Rights Reserved.

| 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package:000022 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000022 of 000062

Filed            19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest  19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

**CNA**

NetProtect 360[SM]

**G. ERISA or any Similar Act**

based upon, directly or indirectly arising out of or in any way involving any actual or alleged violation of **ERISA or any Similar Act**;

**H. Proprietary Rights**

based upon, directly or indirectly arising out of, or in any way involving:

1. patent infringement; or
2. misappropriation of any trade secret or proprietary information, provided, however, that this paragraph H. shall not apply to:
   i) **Electronic Theft of Intangible Property**,
   ii) misappropriation of others' **Confidential Commercial Information** in **Insured Entity's** custody under **Network Security Liability** and **Privacy Injury Liability Coverages** and
   iii) misappropriation of **Confidential Commercial Information** in the course of providing **Professional Services** under the **Professional Services Liability Coverage**;

**I. Bodily Injury/Property Damage**

based upon, directly or indirectly arising out of, or in any way involving any actual or alleged **Bodily Injury** (except for wrongful infliction of emotional distress arising out of a **Privacy Injury** or **Content Injury**) or **Property Damage**;

**J. Contractual Liability**

based upon, directly or indirectly arising out of, or in any way involving:

1. an **Insured's** actual or alleged liability under any oral or written contract or agreement, including but not limited to express warranties or guarantees; or
2. liability of others assumed by the **Insured** under any oral or written contract or agreement.  Provided, however, that this subsection 2 shall not apply to any **Claim** under the Content Coverage.

Notwithstanding the foregoing exclusion, coverage otherwise available to an **Insured** shall apply to such **Insured's** liability that exists in the absence of such oral or written contract or agreement;

**K. Over-Redemption**

based upon, directly or indirectly arising out of, or in any way involving **Over-Redemption**;

**L. Advertising**

based upon, directly or indirectly arising out of, or in any way involving:

1. the inaccurate, inadequate or incomplete description of the price of goods, products or services or failure of goods, products or services to conform with an advertised quality or performance, or the **Insured's** cost guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded; or
2. intentional misrepresentation in **Advertising**, false **Advertising**, unfair or deceptive business practices, provided, however, that this subsection 2 applies only where:
   it is established in a final adjudication by a judge, jury or arbitrator; or
   where there is an adverse admission by an **Insured**; or
   where there is a finding of fact that the **Insured** committed the foregoing conduct; or
   the **Insured** pleads no contest;
   in which event the **Insured** shall reimburse the Insurer for all **Claims Expenses**.

For purposes of determining the applicability of this exclusion, the **Wrongful Act** of a natural person who is an **Insured** shall not be imputed to any other natural person who is an **Insured**;

7

G-147051-A
ED. 1 07

Filed            19-CI-01230    12/03/2019  ©CNA All Rights Reserved   Amy Feldman, Franklin Circuit Clerk
A true copy attest  19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



NetProtect 360℠

### M. Claims by Insureds

by or on behalf of any **Insured** in any capacity provided, however that this Exclusion shall not apply to:
1. any **Claim** that is in the form of a crossclaim, third-party **Claim** or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy;
2. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity** or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator; or
3. any **Claim** that is by an **Insured Person** and alleges **Privacy Injury** resulting from the unauthorized disclosure of such **Insured Person's Nonpublic Personal Information**;

### N. Owned Entity

for a **Claim** made against an **Insured** by any entity, if at the time of the **Wrongful Act** giving rise to such **Claim**:
1. any **Insured** controlled, owned, operated or managed such entity; or
2. any **Insured** was an owner, partner, director, officer or employee of such entity;
For the purpose of this exclusion, a 5% or more owner of the voting stock of a publicly held corporation or a 40% or more owner of the voting stock of a privately held corporation shall be deemed to own such entity;

### O. Failure to Follow Minimum Required Practices

based upon, directly or indirectly arising out of, or in any way involving:
1. Any failure of an **Insured** to continuously implement the procedures and risk controls identified in the **Insured's** application for this Insurance and all related information submitted to the Insurer in conjunction with such application whether orally or in writing;
2. Failure to follow (in whole or part) any Minimum Required Practices that are listed in Minimum Required Practices Endorsement; or
3. The **Insured's** failure to meet any service levels, performance standards or metrics;
Item **3** above shall apply only to **Insureds** whose services are required to satisfy service levels, performance standards or metrics.

This exclusion shall not apply to:
1. an **Insured Person's** negligent circumvention of controls; or
2. an **Insured Person's** intentional circumvention of controls where such circumvention was not authorized by the **Insured**;

### P. Project Planning

based upon, directly or indirectly arising out of, or in any way involving project planning, including but not limited to mistakes in determining capacity needs;

### Q. Inadequate Software

based upon, directly or indirectly arising out of, or in any way involving the inability to use or lack of performance of software programs.

1. due to expiration, cancellation or withdrawal;
2. that have not yet been released from their development stage;
3. that have not passed all test runs or proven successful in applicable daily operations; or
4. that result from the **Insured's** modification of software programs in violation of any software license agreement ( e.g. particularly license provisions regarding modification that invalidate warranty);

### R. Commingling

G-147051-A
FED. 1 07
© CNA All Rights Reserved.

| | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package : 000024 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000024 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



NetProtect 360℠

based upon, directly or indirectly arising out of, or in any way involving the commingling, misappropriation or misuse of funds;

**S. Anti-Trust**

based upon, directly or indirectly arising out of, or in any way involving any:
1. charges of price fixing, restraint of trade, monopolization or unfair trade; or
2. any actual or alleged violation of:
    a. the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade;
    b. any rules or regulations promulgated under or in connection with the above statutes; or
    c. any similar provision of any state, federal or local statutory law or common law.
Provided, however, that this exclusion does not apply to any **Content Injury Claim** or **Privacy Injury Claim**;

**T. Deliberate Acts**

based upon or arising out of the committing of any deliberate fraudulent or deliberate criminal act by the **Insured** or out of the commingling, misappropriation or misuse of funds if a judgment, ruling or other finding of fact in any proceeding establishes that such act, or such commingling, misappropriation or misuse was committed.   If such act, or such commingling, misappropriation or misuse is so determined to have been committed, the **Insured** will reimburse the Insurer for all **Claim Expenses** paid.  The Insurer will not defend any criminal act which was the subject of a criminal prosecution in which the **Insured** was found guilty, pleaded guilty, *nolo contendere* or no contest.  Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

For purposes of determining the applicability of this Exclusion:
1. the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and
2. only facts pertaining to and knowledge possessed by any **Executive** shall be imputed to the **Insured Entity**;

**U. Theft of Video Games**

based upon, directly or indirectly arising out of, or in any way involving theft of computer or video game points, earnings, awards or other intangible property;

**V. Governmental Action**

based upon, directly or indirectly arising out of, or in any way involving an action by any law enforcement, administrative, regulatory, or judicial body, domestic or foreign, to:
1. confiscate, ban, limit, or restrict data or software, the **Insured Entity's Network** or **Network Activity**;
2. **Exploit** or attack in any way, by means of **Electronic Transfer** to interfere with data and software, the **Insured Entity's Network**  or the **Insured Entity's** preparedness or ability to conduct **Network Activity** or **Professional Services**; or
3. intercept, monitor or analyze data or software or other information transmitted over the **Insured Entity's Network** or other **Network** to which it connects, whether under the USA Patriot Act or other law, regulation or order, whether domestic or foreign.

**VI. LIABILITY COVERAGE PARTS EXCLUSIONS**

A. This Insurer shall not be liable to pay any **Liability Loss**:

1. **Employment Practices**

based upon, directly or indirectly arising out of, or in any way involving employment practices or any discrimination, humiliation or harassment of any person or entity on any basis, including but not limited to:

G-147051-A
ED. 1 07

© CNA All Rights Reserved

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package:000025 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000025 of 000062

Filed          19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

**CNA**

NetProtect 360℠

race, creed, color, religion, ethnic background, national origin, age, handicap, marital status, disability, sex, sexual orientation or pregnancy;

**2. Media Activity**

based upon, directly or indirectly arising out of, or in any **Media Activity**.

**B. Exclusions applicable to Content Injury Claims**

The Insurer shall not be liable to pay any **Liability Loss** in connection with any **Content Injury Claim**:

**1. Contractual Rights**

based upon, directly or indirectly arising out of, or in any way involving any contractual rights to the ownership of **Material**;

**2. Merchandising Activities**

based upon, directly or indirectly arising out of, or in any way involving any **Merchandising Activities**;

**3. Production/Recall Costs**

based upon, directly or indirectly arising out of, or in any way involving the **Insured's** production costs, or the **Insured's** cost of reprinting, recalling, recovering, shipping, correcting, reprocessing, restoring, repairing, replacing, or reproducing erroneous, damaged or lost data or **Material**.

**VII. FIRST PARTY EXCLUSIONS**

This Policy does not cover any **First Party Loss**:

**A. Failure to Communicate**

based upon, directly or indirectly arising out of, or in any way involving any defensive measure taken by the **Insured Entity** in response to directions from the **Insured Entity's** third party Internet Service Provider to take such defensive measures to counter an on-going, threatened or emerging threat to any **Network**;

**B. Defects in Data and Software and Network**

based upon, directly or indirectly arising out of, or in any way involving:
1. any defect of design, implementation, operation, incompatibility or any other fault of data and software or the **Insured Entity's Network**, or any part thereof where such defect or fault is introduced by the **Insured Entity's**.
   a. use of a third party product, including but not limited to software and equipment, in a manner inconsistent with the manufacturer's intended use;
   b. modification of a third party product or integration of "components" in violation of the manufacturer's warranty or other license terms;
   c. integration of "components" in a manner inconsistent with any of the any components' intended use as established by its manufacturer; or
   d. failure to maintain any "component" by including and incorporating the most recent patches, updates, upgrades or new versions in accordance with **Insured Entity's** schedule and procedures for such maintenance as described in the **Insured Entity's** CNANetProtect application, or the Minimum Required Practices Endorsement ( whichever is more restrictive) where the **Loss** would have been prevented by such maintenance.
   As used in **b**, **c** and **d** above, the word "components" includes, but is not limited to software, systems, data or equipment developed either by the **Insured Entity** or third parties.

10

G-147051-A
ED. 1 07

© CNA All Rights Reserved.

19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

Package :000026 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000026 of 000062

Filed          19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

2.  any wear, tear, or gradual deterioration of data and software or the **Insured Entity's Network**, or any part thereof;

C.  **Intellectual and Proprietary Rights**

based upon, directly or indirectly arising out of, or in any way involving:
1.  allegations of violation of any software license, or impairment of property rights to proprietary software or data;
2.  allegations of impairment of property rights to proprietary business models, or loss of competitive advantage; or
3.  **Privacy Injury**, and any other allegations of violation of an individual's rights to privacy or misuse of personal information under any law, order or regulation, whether domestic or foreign;

or any potential future income, including but not limited to interest, dividends, or any other indirect or consequential loss associated with 1., 2., or 3. above;

D.  **Extortion**

based upon, directly or indirectly arising out of, or in any way involving any demands by an extortionist; Provided however that this exclusion shall not apply to Extortion Coverage;

E.  **Profit and Loss**

where the existence of **First Party Loss** is dependent upon an inventory computation or a profit and loss computation provided, however, this exclusion shall not apply with respect to reduction of business income to the extent it is covered by the **Basic Electronic Theft Coverage**;

F.  **Value of Stocks**

based upon, directly or indirectly arising out of, or in any way involving the value of shares, stock or securities. This exclusion does not apply to **First Party Loss** to the **Insured Entity's Securities** to the extent it is covered by the **Electronic Theft Coverage**;

G.  **Wireless Networks**

based upon, directly or indirectly arising out of, or in any way involving **Exploits** involving wireless networks or components thereof unless:
1.  all transmitters and receivers in such networks are under the direct physical control of the **Insured Entity**;
2.  all information exchanged over such wireless networks is encrypted; and
3.  all cryptographic keys for encryption are distributed in a manner that precludes compromise of such keys;
4.  all such wireless networks operate externally to the **Insured Entity's Network** perimeter defenses, including firewalls.
This exclusion shall not apply to:
1.  an **Insured Person's** negligent circumvention of controls; or
2.  an **Insured Person's** intentional circumvention of controls where such circumvention was not authorized by the **Insured**;

H.  **Leased Services**

based upon, directly or indirectly arising out of, or in any way involving **Exploits** involving leased, managed or hosted services provided by third party **Telecommunication Service Providers** and other public network/infrastructure providers;

I.  **Goodwill**

based upon, directly or indirectly arising out of, or in any way involving any actual or alleged adverse impact on goodwill, reputation, revenue or potential future income.

11

G-147051-A
ED. 1 07

Filed          19-CI-01230    12/03/2019 © CNA All Rights Reserved.    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Package:000027 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000027 of 000062

Filed          19-CI-01230   12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019   /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

Package :000028 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000028 of 000062

## VIII. CONDITIONS

### A. Territory/Payments

Coverage shall apply worldwide.

All payments made by the Insurer under this Policy shall be made in United States Dollars at the exchange rate listed in the *U.S. Wall Street Journal* on the date payment is made.

### B. Assistance and Cooperation

The **Insured** shall cooperate with the Insurer and, upon the Insurer's request, shall attend hearings and trials. The **Insured** shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses and in the conduct of suits in connection with any **Claim** or **Loss** covered by the insurance afforded by this Policy. The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which is or may be liable to the **Insured**.

### C. Action Against the Insurer

No legal action may be brought against the Insurer, unless, as a condition precedent thereto, the **Insured** shall have fully complied with all of the terms of this Policy, or until the amount of the **Insured's** obligation to pay shall have been fully determined either by judgment against the **Insured** after actual trial and appeal or by written agreement of the **Insured**, the claimant and the Insurer.

The **Insured** may not bring any legal action against the Insurer concerning this Policy:
1. until the **Insured** has fully complied with all the provisions of this Policy; and
2. such legal action is commenced within 12 months of the Insurer's rejection of the written proof of **First Party Loss** or the Insurer's rejection of a **Claim** under the **LIABILITY COVERAGES**;

Recovery is limited to the extent of the insurance afforded by this policy. No entity has the right under this Policy to include the Insurer in any action against the **Insured** to determine the **Insured's** liability, nor will the Insurer be brought into such action by the **Insured** or its representative.

### D. Bankruptcy

Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve the Insurer of any of its obligations hereunder.

### E. Subrogation

In the event of any payment of **Loss** under this Policy, the Insurer shall be subrogated in the amount of such payment to the **Insured's** rights of recovery therefore against any person or organization, and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, including assigning such rights to the Insurer upon its request. The **Insured** shall do nothing to prejudice such rights. All salvages, recoveries, and payments recovered or received after settlement of a **Loss** or **Claim**, shall be applied as if recovered or received prior to settlement of **Loss** or **Claim** and all necessary adjustments to reduce the **Loss** shall be made.

### F. Loss Participation/Other Insurance

The **Insured** agrees that the Deductible identified in the Declarations shall remain uninsured. In the event that any other insurance provides coverage to the **Insured** for **Loss** within the Deductible identified in the Declarations, the Insurer has no duty to participate in or interact with that insurer.

If any **Loss** is insured under any other policies, this policy shall apply:

12

© CNA All Rights Reserved.
19-CI-01230   12/03/2019   Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019   /s/Amy Feldman, Franklin Circuit Clerk

Filed            19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

1. only if such **Loss** exceeds the amount payable under such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this policy; or
2. only if and to the extent such **Loss** is not covered under such other insurance.

The Insurer will have no duty under this policy to defend any **Claim** that any other insurer has a duty to defend or pay any **Claim Expenses** that any other insurer has the duty to pay. If no other insurer defends such **Claim**, the Insurer will undertake to do so; but will then be entitled to the **Insured's** rights against all those other insurers.

Nothing contained in this policy shall be construed to make it subject to the terms, conditions and limitations of any other insurance.

G.  **Cancellation/Nonrenewal**

This Policy may be canceled by the **Named Insured** by surrender of this Policy to the Insurer or by giving written notice to the Insurer stating when thereafter such cancellation shall be effective. This Policy may also be canceled by the Insurer by mailing to the **Named Insured** by registered, certified or other first class mail, at the **Named Insured's** address specified in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter (or 10 days thereafter when cancellation is due to non-payment of premium), the cancellation shall be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice and the Policy shall terminate at the date and hour specified in such notice.  If this Policy is canceled by the **Named Insured**, the Insurer shall retain the customary short rate proportion of the premium hereon.  If the Insurer cancels this Policy, the Insurer shall retain the pro-rata proportion of the premium hereon.

The Insurer may non-renew this Policy by written notice to the **Named Insured** at the address last known to the Insurer.  The Insurer will provide written notice at least 30 days before the non-renewal is to be effective.

H.  **Changes**

Notice to or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or prohibit the Insurer from asserting any right under the provisions of this Policy, nor shall the terms of this Policy be waived or changed except by written endorsement issued to form a part of this Policy.

I.  **Application**

1. The **Insureds** represent and acknowledge that the statements contained on the Declarations and in the **Application**, and any materials submitted or required to be submitted therewith (all of which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are the **Insured's** representations, are true and: (i) are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and (ii) shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.
2. This Policy shall be null and void if the **Application** contains any misrepresentation or omission:
   a. made with the intent to deceive, or
   b. which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the Policy.

J.  **Coverage for New Subsidiaries**

1. If, after the Effective Date of this Policy, the **Named Insured** (i) creates or acquires an entity, or (ii) merges with another entity such that the **Named Insured** is the surviving entity, then such entity and any of its **Executives** or **Employees** who otherwise would thereby become **Insureds** shall be covered under this Policy, subject to its terms and conditions, only if:
   a. the revenue of such entity as reflected on its most recent audited consolidated financial statement is less than 10% of the total revenue of the **Named Insured** as of the date of the **Insured Entity's** most recent audited consolidated financial statement prior to such transaction; or

13

G-147051-A
ED. 1 07
© CNA All Rights Reserved.

Filed            19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Package:000029 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000029 of 000062

Filed          19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

**CNA**

NetProtect 360℠

    b.  other than as described in paragraph a. immediately above, the Insurer, at its sole option upon submission of such information as the Insurer may require, and payment of any additional premium and/or amendment of the provisions of the Policy, agrees in writing to provide coverage for such entity, its **Executives** or **Employees**.

2.  There shall be no coverage under this Policy for any act or omission by, or **Loss** due to or sustained by, such created or acquired entity, or by any persons considered to be **Insureds** pursuant to paragraph a. above, where such act or omission or **Loss** occurred in whole or in part before the effective date of such acquisition or merger, or for any act or omission or **Loss** occurring on or after such date which, together with any acts or omissions or **Loss** occurring before such date, would be considered causally connected by reason of any common fact, circumstance, situation, transaction or event.

### K.  Coordination Among Insuring Agreements

Coverage exists only for those Insuring Agreements designated as included in Item 3 of the Declarations and attached to this Policy. Each contains terms which limit coverage to the scope of the coverage grant for that Insuring Agreement. Should two or more Insuring Agreements apply to the same **Claim** the Insurer will not pay more than the actual loss or the highest available remaining limit of insurance under any one Liability Coverage, whichever is less. Should two or more First Party Insuring Agreements apply to the same **Occurrence**; the Insurer will not pay more than the lowest applicable limit of insurance. In no instance, shall the Insurer be required to pay more than the Policy Aggregate identified in the Declarations.

### L.  Change of Status of Insured Entity

#### 1.  Takeover of Named Insured

In the event of a **Takeover** of the **Named Insured**, coverage under this Policy shall continue until this Policy is otherwise terminated, but only with respect to acts or omissions occurring before the effective date of the **Takeover**, unless the Insurer is notified in writing of the **Takeover** prior to the **Takeover** effective date and agrees in writing to provide coverage for such acts or omissions occurring on or after such effective date, and **Named Insured** accepts any special terms, conditions, exclusions or additional premium charge required by the Insurer.

#### 2.  Cessation of Subsidiary

If any organization ceases to be a **Subsidiary** there shall be no coverage under this Policy for any act or omission by such organization, or any **Executive** or **Employee** of such organization, occurring after the date such organization ceased to be a **Subsidiary**.

### M.  Notice of Material Change

The **Named Insured** agrees to notify the Insurer as soon as possible, but in no event later than 30 days after a **Material** change, of any such **Material** change to the **Insured Entity's** business or **Network**. This includes providing the Insurer all details of any such changes to the **Insured Entity's** business or **Network**. The Insurer reserves the right to re-underwrite this Policy and re-price premiums based on these changes. In the event that the **Named Insured** fails to notify the Insurer of a **Material Change** to the **Insured Entity's** business or **Network** and a related **Loss** or **Claim** results from that **Material Change**, the Insurer reserves the right to deny payment of any such **Loss** or refuse to defend any such **Claim**.

### N.  Company Authorization

The **Insureds** agree that **Named Insured** will act on behalf of the **Insureds** with respect to giving of all notice to the Insurer, the receipt of notices from the Insurer, the payment of the premiums, the receipt of any return premiums that may become due under this Policy, and the acceptance of endorsements.

### O.  Assignment

14

Filed          19-CI-01230   12/03/2019   © CNA All Rights Reserved.   Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Package : 000030 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000030 of 000062

Filed             19-CI-01230     12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230     12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

                                                   NetProtect 360<sup>SM</sup>

Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed to this Policy.

**P.  Entire Agreement**

The **Named Insured** and all **Insureds** agree that this Policy, including the **Application**, any materials submitted or required to be submitted therewith, and any written endorsement attached, constitute the entire contract existing between them and the Insurer or any of its agents relating to this insurance.

**Q.  Minimum Required Practices**

The **Insured** warrants, as a condition precedent to coverage under this Policy, that it shall:
1.  follow the Minimum Required Practices that are listed in the Minimum Required Practices endorsement as a condition of coverage under this policy, and
2.  maintain all risk controls identified in the **Insured's Application** and any supplemental information provided by the **Insured** in conjunction with **Insured's Application** for this Policy.

**R.  Examination of Your Books and Records**

The **Insured** agrees to allow the Insurer to examine and audit the **Insured Entity's** books and records that relate to this Policy, at any time during the **Policy Period** and up to 3 years thereafter.

**S.  Inspections and Surveys**

The Insurer has the right but is not obligated to do the following, on its own or through its independent contractors:
1.  make remote electronic scan inspections of all or any part of the **Insured Entity's Network** or of the **Network** of any entities newly acquired by the **Insured** at any time;
2.  give the **Insured** reports on the conditions the Insurer finds;
3.  recommend changes to the **Insured Entity's Network**; or
4.  conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged. The Insurer, by such inspections, surveys, reports, or recommendations, does not warrant that the **Insured Entity's Network** is safe or in compliance with laws, regulations, codes or standards, domestic or foreign.  This condition applies not only to the Insurer, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports or recommendations.

**T.  Estates, Legal Representatives and Domestic Partners**

The estates, heirs, legal representatives, assigns and any **Domestic Partner** of an **Insured Person** shall be considered **Insured Persons** under this Policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a **Domestic Partner**, where such **Claim** seeks **Damages** from marital community property, jointly held property or property transferred from such **Insured Person** to the **Domestic Partner**. No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign, **Domestic Partner**. All terms and conditions of this Policy, including without limitation the retention, applicable to **Damages** or **Claim Expenses** incurred by the **Insured Person** shall also apply to **Damages** and **Claim Expenses** incurred by such estates, heirs, legal representatives, assigns and **Domestic Partners**.

**U.  Notice of Claims or Potential Claims**

1.  If, during the **Policy Period** or **Extended Reporting Period**, if applicable, any **Claim** is first made against the **Insureds**, the **Insureds** shall, as a condition precedent to the obligations of the Insurer under any Liability Coverage , give written notice to the Insurer as soon as possible.
2.  If, during the **Policy Period**, the **Insureds** first become aware of a specific act or omission which may reasonably give rise to a future **Claim** and during the **Policy Period** give written notice to the Insurer of:

15

G-147051-A
ED. 1 07

©CNA All Rights Reserved.

Filed             19-CI-01230     12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230     12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Package:000031 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000031 of 000062

Filed              19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

**CNA**

NetProtect 360℠

a. the names of any potential claimants and a description of the act or omission which forms the basis of the potential **Claim**,
b. the identity of the specific **Insureds** allegedly responsible for such specific act or omission,
c. the consequences which have resulted or may result from such specific act or omission,
d. the nature of the potential monetary damages or non-monetary relief which may be sought in consequence of such specific act or omission, and
e. the circumstances by which the **Insureds** first became aware of such act or omission,

then any **Claim** otherwise covered pursuant to **Liability Coverage** which is subsequently made and which arises out of such act or omission shall be deemed to have been first made against the **Insured** at the time such written notice was received by the Insurer.

3. Except as provided in **2.** above, a **Claim** shall be deemed made on the earlier of:
   a. the date of service upon or other receipt by any **Insured** of a complaint, indictment or similar document against the **Insured** in such proceeding or arbitration;
   b. the **Insured's** receipt of notice of such written demand.
4. Any notices required to be given to the **Named Insured** shall be provided to the **Named Insured** at the last known address and to its insurance agent or broker. The mailing by certified mail of such notice shall be sufficient.
5. Any notices required to be sent to the Insurer shall be mailed to the Insurer at the address specified in Item 6 of the Declarations, and shall be effective upon receipt.

**V.  Notice of Occurrence**

If an **Occurrence** takes place or is reasonably likely to take place, the **Insured Entity** must do the following:
1. provide notice to the Insurer by telephone as soon as practicable;
2. such notice should include particular details as to the nature of the **Occurrence**; and
3. immediately forward to the Insurer all information the **Insured Entity** possesses or receives in connection with the **Occurrence**.

**W.  Proof, Valuation and Payment of First Party Loss**

The **Named Insured** must submit a written proof of **First Party Loss** providing details relating to the particulars and composition of the amounts claimed in the event of an **Occurrence**. The proof of loss shall be submitted with reasonable promptness, but in no event later than 6 months after the date initial notice of the **Occurrence** was submitted to the Insurer. The amount of **First Party Loss** shall be payable by the Insurer, to the **Named Insured**, within 60 days after the Insurer's formal agreement to the amounts claimed in the proof of loss.

**X.  Economic and Trade Sanctions**

This policy does not provide coverage for **Insureds**, transactions or that part of **Damages** or **Claim Expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

**Y.  Arbitration**

All disputes or differences between the **Insured** and the Insurer which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of damages or claim expenses, shall be submitted to the alternative dispute resolution ("ADR") process set forth in this Section.

Either the Insurer or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the Insurer's choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

The Insurer and each and every **Insured** agree that there shall be two choices of **ADR** process:
1. non-binding mediation administered by the American Arbitration Association, in which the Insurer and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or

16

G-147051-A
ED. 1.07
© CNA All Rights Reserved.

Package: 000032 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000032 of 000062

Filed              19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



NetProtect 360℠

2. arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals.

In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Insured** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorney's fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 60 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York or Illinois or in the state indicated in the Declarations as the mailing address for the **Named Insured**.

## IX. LIABILITY COVERAGES EXTENDED REPORTING PERIODS

As used herein, **Extended Reporting Period** means the period of time after the end of the **Policy Period** for reporting **Claims** to the Insurer that are made against **Insureds** during the applicable **Extended Reporting Period** by reason of a **Wrongful Act** that happened subsequent to the **Prior Acts Date** and prior to the end of the **policy period** and is otherwise covered by this policy. It is understood and agreed that the **Extended Reporting Period** shall not be construed to be a new policy and any **Claim** submitted during such period shall otherwise be governed by this policy.

### A. Automatic Extended Reporting Period

If the **Named Insured** or the Insurer cancels or non-renews any **Liability Coverage** , the Insurer will provide the **Insureds** with an automatic, non-cancelable 60 day **Extended Reporting Period** starting at the termination of the **Policy Period** if there is no subsequent policy purchased by the **Named Insured** or for the benefit of the **Named Insured**.

### B. Optional Extended Reporting Period

If the **Named Insured** or the Insurer cancels or non-renews any **Liability Coverage** , the **Named Insured** shall have the right to purchase, upon payment of an additional premium, an optional **Extended Reporting Period** to commence on the effective date of such cancellation or non-renewal. The additional premium and effective dates for the optional **Extended Reporting Period** shall be as set forth in the **Extended Reporting Period** Endorsement.

C. As a condition precedent to the right to purchase the optional **Extended Reporting Period**, the total premium for this Policy must have been paid. The right to purchase the optional **Extended Reporting Period** shall end unless the Insurer receives written notice and full payment of the premium for such period within 30 days after the end of the **Policy Period**.

D. If the optional **Extended Reporting Period** is purchased, the entire premium shall be deemed fully earned at its commencement without any obligation by the Insurer to return any portion thereof.

E. There is no separate or additional Limit of insurance for the Automatic or Optional **Extended Reporting Period**.

F. The first 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic Extended Reporting Period.

## X. DEFINITIONS

The following defined words shall have the same meaning throughout this **Policy**, whether expressed in the singular or the plural. For purposes of this Policy.

17

G-147051-A
ED. 1 07

©CNA All Rights Reserved

| Filed | 19-CI-01230 | 12/03/2019 | Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package : 000033 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000033 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

**CNA**

NetProtect 360℠

**Advertising** means **Material** that is broadcast or published on the **Insured Entity's** behalf or for others.

**Application** means all signed applications for this **Policy** and for any policy in an uninterrupted series of policies issued by the **Insurer** or any affiliate of the **Insurer** of which this **Policy** is a renewal or replacement. **Application** includes any materials submitted or required to be submitted therewith. An affiliate of the **Insurer** means an entity controlling, controlled by or under common control with the **Insurer**.

**Bodily Injury** means injury to the body, sickness, or disease sustained by a person, and, where resulting from such injuries, loss of consortium, emotional distress, mental anguish, mental injury, shock, humiliation, or death.

**Claim** means:
A. a written demand for monetary damages or non-monetary relief (including demands for injunctive or declaratory relief); or
B. a civil adjudicatory proceeding or arbitration against an **Insured**, including any appeal therefrom alleging a **wrongful act.**
However, a **Claim** does not include any criminal proceeding or investigation or any regulatory proceeding or investigation except if the regulatory proceeding is a **Privacy Regulation Proceeding**

**Claim Expenses** means:
A. fees charged by attorneys designated by the **Insurer** or by the **Insured Entity** with the **Insurer's** advance written consent; and
B. all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** if incurred by the **Insurer**, including premiums for any appeal bond, attachment bond or similar bond, but without any obligation of the **Insurer** to apply for or furnish any such bond.

However, **Claim Expenses** do not include salaries, wages fees, overhead or benefit expenses associated with the **Executives, Employees** or agents of the **Insured Entity** or of the **Insurer**; **Claim Expenses** will be paid first and such payment will reduce the Limit of insurance available to pay **Damages.**

**Commerce Operations** means the **Insured Entity's** income producing activities.

**Covered Intangible Property** means intangible property listed on the CIP schedule.

**Computer Virus** means unauthorized computer code that is designed and intended to transmit, infect and propagate itself over one or more **Networks**, and cause:
A. computer code or programs to perform in an unintended manner;
B. the deletion or corruption of electronic data or software; or
C. the disruption or suspension of a **Network**.

**Confidential Commercial Information** means information in a durable and persistent form and that has been provided to the **Insured Entity** by another, or created by the **Insured Entity** for another where such information is subject to the terms of a confidentiality agreement obligating the **Insured Entity** to protect such information on behalf of another.

**Content Injury** means:
A. publication or an utterance in violation of an individual's rights of publicity, including commercial appropriation of name, persona or likeness;
B. any form of defamation or other tort related to an utterance or publication which disparages or harms the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, negligent or intentional infliction of emotional distress, outrage or outrageous conduct;
C. infringement of copyright, title, slogan, logo, trademark, trade name, trade dress, service mark or service name; or
D. unfair competition or unfair trade practices based solely upon the same facts as, and alleged in conjunction with, subparagraph C.above, including but not limited to dilution, confusion, deceptive or unfair trade practices, civil actions for consumer fraud, false, disruptive or misleading **advertising** or misrepresentation in **advertising**.

18

G-147051-A
ED 1 07

| | 19-CI-01230 | 12/03/2019 © CNA All Rights Reserved. | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package : 000034 of 000062   Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)   Package : 000034 of 000062

Filed 19-CI-01230 12/03/2019 Amy Feldman, Franklin Circuit Clerk
A true copy attest 19-CI-01230 12/03/2019 /s/Amy Feldman, Franklin Circuit Clerk

**Content Injury Claim** means a **Claim** arising out of **Content Injury**.

**Damages** means civil awards, settlements and judgments (including any award of pre-judgment or post-judgment interest) which the **Insureds** are legally obligated to pay as a result of a covered **Claim**. **Damages** shall not include:

A. the return or restitution of the **Insured Entity's** profits, royalties, fees, expenses, taxes or costs;
B. criminal, civil, administrative or regulatory relief, fines or penalties;
C. any amounts for which there is no legal recourse against the **Insureds**, including those which the **Insureds** are not legally obligated to pay;
D. injunctive or declaratory relief;
E. matters which are uninsurable as a matter of law; or
F. plaintiff's attorney fees or expenses associated with items **A.** through **E.** above.

Notwithstanding the foregoing paragraph, **Damages** shall include (subject to this Policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts), punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages. As used herein, "applicable law" means the law of any of the following jurisdictions:

1. where the **Claim** seeking such **Damages** is brought or where such **Damages** are awarded or imposed;
2. where the **Wrongful Act** giving rise to the **Claim** occurred;
3. where the **Insureds** subject to such **Damages** are incorporated, have their principal place of business or reside; or
4. where the Insurer is incorporated or has its principal place of business.

**Denial of Electronic Access** means the unscheduled and unplanned inability of an authorized third party user:

1. to gain access to an **Insured Entity's Network** to communicate with the **Insured Entity**; or
2. to use the **Insured Entity's Network** to communicate with other computers or computer networks;

However, **Denial of Electronic Access** does not include any Internet Service Provider interruptions, whether scheduled or not.

**Denial of Service Attack** means an attack executed over one or more **Networks** or the Internet, which attack is specifically designed and intended to disrupt the operation of one or more **Networks** and render the **Networks** inaccessible to authorized users.

**Domestic Partner** means any spouse and any person qualifying as a **Domestic Partner** under any federal, state or local laws or under the **Insured Entity's** employee benefit plans.

**E-Commerce Activity** means the following activities performed by the **Insured Entity**:

A. design, maintenance, and hosting of the **Insured Entity's** web sites;
B. the provision of electronic information or services through the **Insured Entity's** web sites;
C. the sale of products through the **Insured Entity's** web sites;
D. receiving electronic information from users who are not **Insureds** through an **Insured Entity's** web site, including through subscriptions or registrations to use an **Insured Entity's** web site, chat rooms, e-mail services, or electronic bulletin boards.

**Electronic Infection** means the transmission of a **Computer Virus** into a **Network**.

**Electronic Information Damage** means:

A. the unauthorized copying, destruction, addition, deletion, alteration or theft of any information (other than software) resident on the **Network** of an **Insured Entity** or any third party; or
B. the unauthorized use, alteration or destruction of any software resident on the **Network** of an **Insured** or any third party.

**Electronic Material** means text, pictures, graphics, sound or other expression that exist solely in a format that can be stored and transmitted by computing devices. **Electronic Material** does not include any text, pictures, graphics, sound or other expression that exist in a printout or other tangible format or display, or that are transmitted via television, radio, or other media, whether broadcast, cable, via satellite or otherwise.

©CNA All Rights Reserved.
Filed 19-CI-01230 12/03/2019 Amy Feldman, Franklin Circuit Clerk
A true copy attest 19-CI-01230 12/03/2019 /s/Amy Feldman, Franklin Circuit Clerk
Package:000035 of 000062
Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)
Package : 000035 of 000062

Filed          19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

**Electronic Media Activity** means the following activities performed by an **Insured**:

A. gathering, acquiring, obtaining, researching, developing, and preparing **Electronic Material** for publication in any computer readable form including over the internet or a **Network** on CD ROM, Magnetic disk, tape or other form suitable for processing by computer or a **Network**;

B. the dissemination or utterance of **Electronic Material** in any computer readable form including over the internet or a **Network**, on CD ROM, Magnetic disk, tape or other form suitable for processing by computer or a **Network**;

C. the storage of information in the **Insured's Network** but solely to the extent such storage of information is alleged to be a violation of the rights of privacy of an individual.

**Electronic Theft** means:

A. Under the **First Party Coverage, Basic Electronic Theft Coverage**:

    1. a disbursement or transfer of the **Insured Entity's Money** or **Securities** to a person or entity that is not authorized to receive them;

    2. delivery of the **Insured Entity's Goods** to a person or entity that is not authorized to receive them.

B. **Under First Party Coverage, Electronic Theft of Services**

    delivery of the **Insured Entity Services** to a person or entity that is not authorized to receive them;

C. **Under First Party Coverage, Electronic Theft of Intangible Property**:

    1. the conveyance or transfer of the **Insured Entity's Covered Intangible Property** to a person or entity that is not authorized to receive it,

    2. the duplication and retention of copies of the **Insured Entity's Covered Intangible Property** by a person or entity that is not authorized to duplicate or retain copies of it;

including all continuations or repetitions of such events, caused solely and directly by the transmission of information through or to the **Insured Entity's Network** and which is created or caused by an **External Source**.

**Electronic Transfer** means the transmission of information between computing devices, by wires or by wireless means.

**Employee** means a person (other than an **Executive**) whose work or service is controlled and directed by an **Insured Entity** **Employee"** includes a person leased to the **Insured Entity** by an employment leasing agency.   **Employee** does not include independent contractors.

**ERISA or any Similar Act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common, statutory or other law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

**Executive** means any of an **Insured Entity's** duly elected or appointed directors, officers, managing partners, general partners or trustees.

**Exploit** means **Unauthorized Access, Electronic Infection** or a **Denial of Service Attack** that results in **Network Impairment**.

**External Source** means a person or persons who are not the **Insured Entity's Employees, Executives**, or independent contractors at the time of an **Exploit** or **Electronic Theft**. The **Insured Entity's** former **Employees, Executives**, or independent contractors shall be deemed to be an **External Source** only with respect to acts they commit after they have been separated by more than 60 days.

**Extra Expense** means any reasonable and necessary expenses, in excess of the **Insured Entity's** normal operating expenses, that the **Insured Entity** incurs during the **Period of Restoration** associated with restoring and/or resuming **Commerce Operations**, including;

A. reasonable expense incurred to minimize the interruption of **Commerce Operations** not covered elsewhere in this Policy; and,

G-147051-A
ED. 1.07

19-CI-01230    12/03/2019  © CNA All Rights Reserved.    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Package:000036 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000036 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

**CNA**

NetProtect 360℠

B. reasonable expense incurred to resume **Commerce Operations** on a temporary basis, including those associated with securing temporary third party Internet Service Provider services, temporary website and/or e-mail hosting services, rental of temporary **Networks**, other temporary equipment or service contracts;

to the extent it reduces the amount of loss that otherwise would have been payable under the First Party Coverages.

**Failure of Third Party System** means disruption or degradation of another's **Network** .

**First Party Loss** means all amounts which the Insurer is obligated to pay as set forth in each First Party Insuring Agreement.

**Goods** means tangible physical property that:
A. has economic value;
B. is held by the **Insured Entity** in its inventory for sale;
C. is shipped by the **Insured Entity** to its customers via land, sea or air; and,
D. is sold or exchanged by the **Insured Entity** in trade or commerce.

However, **Goods** do not include **Money** or **Securities**.

**Insured** means the Named Insured, its **Subsidiaries** and **Insured Persons**.

**Insured Entity** means the Named Insured and its **Subsidiaries**.

**Insured Persons** means:
A. any person who is or becomes an **Executive** or **Employee** of the **Insured Entity** but solely for a **Wrongful Act** performed while such person was acting on behalf of the **Insured Entity**; and
B. any person who was affiliated with the **Insured Entity** as an **Executive** or **Employee**, but solely for a **Wrongful Act** performed during the time of such affiliation while acting on behalf of the **Insured Entity**.

**Intangible Property** means that property which is identified as **Intangible Property** in the **Electronic Theft of Intangible Property** Endorsement to the Policy.

**Interrelated Wrongful Acts** means all **Wrongful Acts** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**Liability Loss** means sum of all **Damages** and all **Claim Expenses**.

**Loss** means **Liability Loss** and **First Party Loss**.

**Material** means text, pictures, graphics, sound or other expression in any format, whether electronic otherwise.

**Material Change** means:
A. an **Insured Entity's** entry into a business or a change in the nature of an **Insured Entity's** existing business that is substantially different from such **Insured Entity's** business at the time this Policy was underwritten; or
B. a change in any of the items for which "Material Change" is checked, in the Minimum Required Practices Endorsements

**Media Activity** means gathering, acquiring, obtaining, researching, developing, preparing, filming, videotaping and recording of **Material** or the dissemination or utterance of **Material** through any medium except that **Media Activity** does not include **Electronic Media Activity**.

**Merchandising Activities** means manufacture, production advertising, promotion, sale or distribution of tangible physical items which contain or display others' intellectual property without the expressed authorization of the owner of such intellectual property.

**Money** means the following, but only to the extent that they exist solely in a digital or electronic format:

21

Package:000037 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000037 of 000062

Filed                19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

A.  cash, currency, bank notes, or other negotiable instruments in current use and having face value;
B.  travelers checks, registered checks and money orders held for sale to the public;
C.  a record of credit in the **Insured Entity's** account held by another; and
D.  a record of an amount owed to the **Insured Entity** by another.
However, **Money** does not include **Securities** or **Intangible Property** or any item identified in subsections A. through C. above which do not exist solely in a digital or electronic format.

**Named Insured** means the entity specified in Item 1 of the Declarations.

**Network** means a party's local or wide area network owned or operated by or on behalf of or for the benefit of that party, provided, however, **Network** shall not include the internet, telephone company networks, or other public infrastructure network.

**Network Activity** means:
A.  use of the **Insured Entity's Network** to:
    1.  send and receive e-mail;
    2.  send and receive digital documents and/or data;
    3.  host and/or publish the **Insured Entity's** websites; or
    4.  browse the World Wide Web;
B.  the **Insured Entity's**:
    1.  publishing, editing, maintaining, or interacting with its website,
    2.  use of its internal computer network or provision of access to its **Network**,
    3.  retrieval, storage, saving, processing and/or distributing its data and software; or,
    4.  reliance on the accuracy, validity, source authenticity or integrity of its data and software.
However, **Network Activity** does not include the **Insured's** use of telephone systems to communicate person-to-person by voice or to communicate from facsimile machine to facsimile machine, unless such systems are directly and permanently integrated into the same **Network** being used for A. and B. above.

**Network Extortion** means an incident, or series of related incidents occurring during the **Policy Period** where an **Insured Entity** has been credibly threatened or has received an extortion demand, and believes there is imminent and probable danger of:
A.  loss of or damage to its **Network** or
B.  loss of its **Money**, **Securities** or **Intangible Property**
C.  loss of an **Insured Entity's** confidential information or the confidential information of others in its care or
D.  defacement of the **Insured Entity's** website.

**Network Extortion Expense** means all reasonable and necessary expenses incurred by the **Insured Entity**:
A.  in order to protect **Insured Entity's Money** or **Securities** or **Intangible Property** from loss, including payment of monies demanded by an extortionist;
B.  in order to avoid loss of or damage to **Insured Entity's Network** in response to a **Network Extortion** including payment of monies demanded by an extortionist,
Provided, however that **Network Extortion Expense** shall not include any **Loss** based upon, directly or indirectly arising out of, or in any way involving any demands by an extortionist other than demands for money in exchange for:
1.  the restoration or return of **Insured Entity's Money, Securities, Goods, Services,** or **Intangible Property**; or
2.  the restoration of **Insured Entity's Network**; or
3.  the restoration of any defaced portions of the **Insured Entity's** web site; or
4.  not carrying out illegal threats made directly or indirectly, to impair or destroy **Insured Entity's Network** by an **Exploit** perpetrated by means of an **Electronic Transfer** or ;
5.  not publicizing that **Insured Entity's Network** will be or has been impaired or destroyed by an **Exploit** perpetrated by means of an **Electronic Transfer**; or
6.  not disclosing the **Insured Entity's** confidential information to unauthorized recipients.

**Network Impairment** means disruption or damage to the **Insured's Network** causing that network to be impaired to such an extent that the **Insured** is substantially unable to conduct one or more activities defined as **Network Activity**.

**Network Security Claim** means any **Claim** arising out of :

22

G-147051-A
ED. 1.07

Package : 000038 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000038 of 000062

Filed                19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
                                                  © CNA All Rights Reserved.
A true copy attest   19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

Filed          19-CI-01230    12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

A. Denial of Electronic Access;
B. Failure of Third Party System; or
C. Electronic Information Damage.

**Nonpublic Personal Information** means information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories.

**Occurrence** means:
A. a Network Extortion under the **FIRST PARTY INSURING AGREEMENTS A, Network Extortion;**
B. an Exploit under the **FIRST PARTY INSURING AGREEMENTS B, Loss of or Damage to Insured Entity's Network;**
C. a Network Impairment resulting from an Exploit under the **FIRST PARTY INSURING AGREEMENTS C, Business Interruption and Extra Expense;**
D. an Exploit under the **FIRST PARTY INSURING AGREEMENTS D, Emergency Response Fund;**
E. an Electronic Theft under **THE FIRST PARTY INSURING AGREEMENTS E, F and G, Basic Electronic Theft, Electronic Theft of Services and Electronic Theft of Intangible Property.**

**Over-redemption** means price discounts, prizes, awards, coupons or any other valuable consideration given in excess of the total contracted or expected amount.

**Period of Restoration** means the period of time that:
A. Begins with the date and time that **Commerce Operations** have first been interrupted by a **Network Impairment** and after application of the Business Interruption Waiting Period Deductible, as specified in the Declarations; and
B. Ends with the earlier of:
   1. the date and time **Commerce Operations** have been restored to substantially the level of operation that had existed prior to the **Network Impairment;** or
   2. one hundred and twenty hours from the time that **Commerce Operations** were first interrupted by such **Network Impairment.**
The Business Interruption Waiting Period Deductible specified above represents the number of hours the **Insured Entity's Commerce Operations** are interrupted before the Insurer is first obligated to pay for loss (other than **Extra Expense**) covered by **FIRST PARTY INSURING AGREEMENTS C, Business Interruption and Extra Expense.** This Business Interruption Waiting Period Deductible incepts immediately following the interruption of the **Insured Entity's Commerce Operations.**

**Privacy Event** means any situation which in the reasonable opinion of an **Executive** did cause or is reasonably likely to result in the disclosure of **Nonpublic Personal Information.**

**Privacy Injury** means:
A. any act or omission with respect to **Nonpublic Personal Information:**
   1. in violation of an individual's right of privacy, including violation of: any federal, state, foreign or other law, statute or regulation governing the confidentiality, integrity or accessibility of **Nonpublic Personal Information** such as the Health Insurance Portability and Accountability Act of 1996, Gramm-Leach-Bliley Act, Children's Online Privacy Protection Act, or the EU Data Protection Act; or
   2. in violation of any federal, state or other law or regulation, whether domestic or foreign, prohibiting unfair methods of competition, unfair or deceptive trade practices, or consumer fraud.
B. failure of the **Insured Entity** to prevent **Unauthorized Access** resulting in:
   1. distribution of unsolicited content including using "pop-ups" or other ad-ware without written permission of the recipient of such content;
   2. interfering with the use of a **Network** by detaining or directing an individual at an undesired or unintended internet site by hijacking communications, redirecting internet navigation to unintended web sites, or other similar techniques; or
   3. distributing or installing software or other executable files on others' computers or **Networks** without written permission;
C. failure of **Insured Entity** to prevent unauthorized access to, unauthorized disclosure of, or unauthorized use of **Confidential Commercial Information;**

23

Filed          19-CI-01230    12/03/2019  © CNA All Rights Reserved.  Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk

Package:000039 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000039 of 000062

Filed                    19-CI-01230    12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest       19-CI-01230    12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk

CNA

NetProtect 360℠

D.  failure of Insured Entity to provide notice of potential disclosure of Nonpublic Personal Information or Confidential Commercial Information in violation of a Security Breach Notice Law.

Provided however, that A. through D. above shall specifically exclude information in spoken form or conveyed via telephone or other means in which no record of the information, its transmission or its source or recipient remains after it is conveyed.

**Privacy Injury Claim** means any Claim (other than a **Privacy Regulation Proceeding**) arising out of **Privacy Injury**.

**Privacy Regulation Proceeding** means a civil, administrative or regulatory proceeding against an **Insured** by a federal, state or foreign governmental authority alleging violation of any law referenced under the definition of **Privacy Injury** or a violation of a **Security Breach Notice Law**.

**Property Damage** means:
A.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
B.  loss of use of tangible property that is not physically damaged which is caused by an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
Tangible property does not include electronic data. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Prior Acts Date** means the date specified as such in Item 3 of the Declarations, on or after which a **Wrongful Act** must have been committed.

**Policy Period** means the period of time from the inception date to the expiration date specified in Item 2 of the Declarations, or any earlier cancellation date.

**Pollutants** means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed ), as well as any air emission, odor, waste water, oil, oil products, infectious or medical waste, asbestos, asbestos products or any noise.

**Professional Services** means those services specified in the attached "Professional Services Endorsements".

**Professional Services Claim** means any Claim arising out of a **Wrongful Act** in the performance of **Professional Services**.

**Public Relations Event** means any situation which in the reasonable opinion of an **Executive** did cause or is reasonably likely to cause economic injury to the **Insured Entity**. **Public Relations Event** includes a **Privacy Event**.

**Public Relations Event Expenses** means all reasonable and necessary fees, costs and expenses incurred by the **Insured Entity** with the Insurer's prior written consent, in connection with such **Public Relations Event**.

**Related Claims** means all Claims arising out of a single **Wrongful Act** or **Interrelated Wrongful Acts**.

**Securities** means negotiable and non-negotiable instruments or contracts, including tokens, tickets, revenue and other stamps in current use, notes, stock certificates, bonds, debentures, warrants, letters of credit, warehouse receipts, negotiable bills of lading, motor vehicle title as well as evidences of debt issued in connection with credit or charge cards which are not issued by the **Insured Entity**, including the digital or electronic equivalents of all of the above.

24

C-147051-A
FP 07

©CNA All Rights Reserved.

Filed                    19-CI-01230    12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest       19-CI-01230    12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk

Package:000040 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000040 of 000062

Filed          19-CI-01230    12/03/2019    Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360™

**Security Breach Notice Law** means any statute or regulation that requires an entity storing **Nonpublic Personal Information** on its **Network** to provide notice to specified individuals of any actual or potential **unauthorized access** with respect to such **Nonpublic Personal Information**, including Sections 1789.29 and 1798.82 – 1798.84 of the California Civil Code (formerly S.B. 1386).

**Services** means those services of the **Insured Entity** as listed in the **Electronic Theft Insured Entity Services Endorsement**.

**Subsidiary** means any entity in which and so long as more than 50% of the voting stock is owned by the **Named Insured**, either directly or indirectly:
A. on or before the effective date of this Policy; or
B. after the Effective Date of this Policy by reason of being created or acquired by the **Named Insured** after such date, if and to the extent coverage with respect to the entity is afforded pursuant to Section VIII J;
   including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**Takeover** means:
A. the acquisition by another entity or person, or group of entities or persons acting in concert, of (i) the ownership or control of voting stock of the **Named Insured** resulting in the ownership or control of more than 50% of the voting stock of the **Named Insured** or (ii) assets of the **Named Insured** resulting in the ownership of more than 50% of the total consolidated assets of the **Named Insured** as of the date of the **Named Insured's** most recent audited consolidated financial statement prior to such acquisition;
B. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity; or
C. the consolidation of the **Named Insured** with another entity.

**Telecommunications Services Provider** means a party's telephone company, Internet Service Provider or equivalent telecommunications service provider.

**Third Party Custodian** means any third party to whom the **Insured Entity** entrusts **non-public personal information** and with whom the **Insured Entity** has a Business Associate Agreement, as required under the Health Insurance Portability Accessibility Act or a substantially equivalent agreement required by any other similar privacy law

**Unauthorized Access** means any accessing of the **Insured Entity's Network** or information residing on the **Insured Entity's Network** by unauthorized persons or by authorized persons accessing or using **Insured Entity's Network** or information thereupon in an unauthorized manner. **Unauthorized Access** also includes theft from an **Insured Entity** of any information storage device used by **Insured Entity** to:
A. store and retrieve information on its **Network**; or
B. transport **Insured Entity's** information between **Insured Entity** and authorized recipients.

**Wrongful Act** means:
A. With respect to insuring agreement 1, any **Content Injury** actually or allegedly committed by any **Insured** in the performance of **Electronic Media Activity**.
B. With respect to insuring agreement 2,
   1. any **Privacy Injury** committed by an **Insured**, and
   2. any **Privacy Injury** committed by a **Third Party Custodian**, provided however that **Privacy Injury Claims** related to this item 2. shall be subject to the **Third Party Custodian Privacy Injury** sub limit in the amount and as specified in the declarations. This amount is part of and not in addition to the **Privacy Injury Limit**;
C. With respect to insuring agreement 3, any actual or alleged act, error, omission, neglect or breach of duty committed by an **Insured** in the performance of the **Professional Services** as set forth in the **Professional Services Endorsement** attached to this Policy.
D. With respect to insuring agreement 4, any actual or alleged act, error, omission, neglect or breach of duty committed by any **Insured**, that results in **unauthorized access**.

25

G-147051-A
ED. 1 07

Filed          19-CI-01230    12/03/201 ©CNA All Rights Reserved Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019    /s/Amy Feldman, Franklin Circuit Clerk

Package  000041 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package  000041 of 000062

Filed            19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk



NetProtect 360℠

IN WITNESS WHEREOF, the Insurer has caused this Policy to be executed by the Insurer's Chairperson and Secretary, but this Policy shall not be binding upon the Insurer unless completed by the attachment of the declarations and executed by the Insurer's duly authorized representative.

Chairman                                    Secretary

Package:000042 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000042 of 000062

G-147051-A
ED-107

26
© CNA All Rights Reserved.

Filed            19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



**POLICYHOLDER NOTICE**
**Economic and Trade Sanctions Conditions**

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

The purpose of this letter is to advise you that your policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.      Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

ENDORSEMENT NUMBER: 1
POLICY NUMBER. 287494054
ISSUED TO: Global Fitness Holdings, Llc
EFFECTIVE DATE OF ENDORSEMENT:
This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative_____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145126-A (ED. 08/03)

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package :000043 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000043 of 000062

Filed              19-CI-01230   12/03/2019   Amy Feldman, Franklin Circuit Clerk
A true copy attest  19-CI-01230   12/03/2019   /s/Amy Feldman, Franklin Circuit Clerk



2.   Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.   Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.   Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.   Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (OFAC) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

**THIS DISCLOSURE NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGE AND PRICE OF YOUR POLICY. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL. YOUR INDEPENDENT INSURANCE AGENT WILL BE ABLE TO EXPLAIN THE TERMS OF THE CONTRACT IN DETAIL.**

ENDORSEMENT NUMBER: 1
POLICY NUMBER: 287494054
ISSUED TO: Global Fitness Holdings, Llc
EFFECTIVE DATE OF ENDORSEMENT:
This endorsement, which forms a part of and is for attachment to the Policy issued by the designated insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative_____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145126-A (ED. 08/03)
Page 2 of 2

Page 2 of 2       19-CI-01230   12/03/2019   Amy Feldman, Franklin Circuit Clerk
A true copy attest  19-CI-01230   12/03/2019   /s/Amy Feldman, Franklin Circuit Clerk

Package:000044 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000044 of 000062

Filed          19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided by your policy.

The policyholder has been previously notified of the availability of and the price for coverage of "Certified Acts of Terrorism" under the Federal Terrorism Risk Insurance Act. The policyholder has opted to exclude such coverage from the applicable Coverage Part. This endorsement excludes such "Certified Acts of Terrorism" from the applicable Coverage Part.

A.   The following exclusion is added:

This insurance does not apply to:
**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B.   The following definitions are added:

1.   For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", and "personal and advertising injury".

2.   "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act and its extensions. The federal Terrorism Risk Insurance Act and its extensions set forth the following criteria for a "certified act of terrorism":
a.   The act resulted in aggregate losses in excess of $5 million; and
b.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL1099XX (1-08)                                           Policy No:   287494054
Page 1                                                    Endorsement No:   2
Columbia Casualty Company                                  Effective Date:
Insured Name: Global Fitness Holdings, Llc

Filed          19-CI-01230   12/03/2019   ©CNA All Rights Reserved.   Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Filed          19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk



### PUBLIC RELATIONS EVENT EXPENSE AMENDATORY ENDORSEMENT

In consideration of the premium paid for this Policy, it is understood and agreed that Section X, DEFINITIONS, the definitions of **Public Relations Event** and **Privacy Event** are deleted in their entirety and replaced with the following:

**Privacy Event** means an act, error or omission of
a.     an **Insured**; or,
b.     someone whom the **Insured** has engaged to provide services pursuant to a written contract and for whom the **Insured** may be legally liable;
which, in the reasonable opinion of an **Executive**, caused, or is reasonably likely to cause, the unauthorized disclosure of **Nonpublic Personal Information** or **confidential commercial information**.

**Public Relations Event** means an act, error or omission of
a.     an **Insured**; or,
b.     someone whom the **Insured** has engaged to provide services pursuant to a written contract and for whom the insured may be legally liable
which in the reasonable opinion of an **Executive**, caused, or is reasonably likely to cause, economic injury to the **Insured Entity**. **Public Relations Event** includes a **Privacy Event**.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

GSL15557XXC (10-09)
Page 1
Columbia Casualty Company
Insured Name: Global Fitness Holdings, Llc

Policy No:        287494054
Endorsement No:   3
Effective Date:

©CNA  All Rights Reserved.

Filed          19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Package:000046 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000046 of 000062

Filed              19-CI-01230      12/03/2019       Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230      12/03/2019       /s/Amy Feldman, Franklin Circuit Clerk



### MINIMUM REQUIRED PRACTICES ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed as follows:

All Requirements must be followed. In the event that there is a change in any of the items for which **Material Change** is checked, you are required to report the change to CNA in accordance with paragraph **M.**, of Section **VIII., Conditions**.

| **Requirement** | **Material Change** |
|---|---|
| Appropriate Policies and Procedures pertaining to network security, Data services and privacy | Notify Underwriter within 30 days |

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL1339XX (2-07)
Page 1
Columbia Casualty Company
Insured Name: Global Fitness Holdings, Llc

Policy No:   287494054
Endorsement No:   4
Effective Date:

©CNA All Rights Reserved.

Filed              19-CI-01230      12/03/2019       Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230      12/03/2019       /s/Amy Feldman, Franklin Circuit Clerk

Package : 000047 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000047 of 000062

Filed          19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk



### Third Party Custodian Privacy Injury Variable Sublimit

In consideration of the premium paid for this Policy, it is understood and agreed that the Policy is amended as follows:

1.  Section **X. DEFINITIONS**, the Definition of **Wrongful Act**, Paragraph B.2. is deleted in its entirety and replaced with the following:

    2.  any **Privacy Injury** committed by a **Third Party Custodian**, provided however that **Privacy Injury Claims** related to this item 2. shall be subject to the **Third Party Custodian Privacy Injury** sublimit in the amount and as specified in the declarations. This amount is part of and not in addition to the **Privacy Injury Limit**;

        However, if such **Third Party Custodian Privacy Injury** sublimit is greater than the two following options, then the **Third Part Custodian Privacy Injury** sublimit shall be reduced to the lesser of the amount specified in i. and ii., below individually for each such **Third Party Custodian**:

        i.   the contractual limit of liability assumed for **Privacy Injury** by each such **Third Party Custodian** in the indemnification provisions favoring the **Insured Entity** contained in each such **Third Party Custodian's** contract with, Business Associate Agreement with, or equivalent agreement with the **Insured Entity**; or

        ii.  the applicable limit of liability in any insurance policy purchased by each such **Third Party Custodian** where such insurance policy specifically includes coverage for the **Third Party Custodian's Privacy Injury** liability;

        Further, if there is no such indemnification provision or insurance policy referenced in subparagraphs i. and ii. above, available to the **Insured**, then there shall be no **Third Party Custodian Privacy Injury** sublimit at all, and the **Third Party Custodian Privacy Injury** Sublimit in item 4 of the Declarations shall be reduced to $0.

2.  The **Third Party Custodians** listed below shall not be subject to the **Third Party Custodian** Sublimits laid out in Paragraph 2; each **Third Party Custodian** listed below shall have the following **Third Party Custodian** Sublimit:,

| **Third Party Custodian** | **Third Party Custodian** Sublimit |
|---|---|
| n/a | |

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL8786XX (10-07)                                              Policy No:  287494054
Page 1                                                        Endorsement No:  5
Columbia Casualty Company                                     Effective Date:
Insured Name: Global Fitness Holdings, LLC    ©CNA All Rights Reserved.

Filed          19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Package:000048 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000048 of 000062

Filed          19-CI-01230   12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk



## PUBLIC RELATIONS EVENT EXPENSE AMENDATORY ENDORSEMENT

In consideration of the premium paid for this Policy, it is understood and agreed that Section X, DEFINITIONS, the definitions of **Public Relations Event** and **Privacy Event** are deleted in their entirety and replaced with the following:

**Privacy Event** means a **Wrongful Act** of
a.   an **Insured**; or,
b.   someone whom the **Insured** has engaged to provide services pursuant to a written contract and for whom the **Insured** may be legally liable;
which, in the reasonable opinion of an **Executive**, caused, or is reasonably likely to cause, the unauthorized disclosure of **Nonpublic Personal Information** or **confidential commercial information.**

**Public Relations Event** means a **Wrongful Act** of
a.   an **Insured**; or,
b.   someone whom the **Insured** has engaged to provide services pursuant to a written contract and for whom the insured may be legally liable
which in the reasonable opinion of an **Executive**, caused, or is reasonably likely to cause, economic injury to the **Insured Entity. Public Relations Event** includes a **Privacy Event.**

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL15557XXC (5-10)
Page 1
Columbia Casualty Company
Insured Name: Global Fitness Holdings, Llc

Policy No.   287494054
Endorsement No:   6
Effective Date:

©CNA All Rights Reserved

Filed          19-CI-01230   12/03/2019     Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019     /s/Amy Feldman, Franklin Circuit Clerk

Package : 000049 of 000062
Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)
Package : 000049 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



## SERVICE OF SUIT

Wherever used in this endorsement Named Insured means the first person or entity named on the declarations page.

In consideration of the premium paid for this Policy, it is agreed that the following provision is added to the Policy:

## SERVICE OF SUIT

In the event the Insurer fails to pay an amount claimed to be due hereunder, the Insurer, at the request of the Named Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. Nothing herein constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to United States District Court, or to seek a transfer of an action to another court as permitted by law.

Service of process in such suit shall be made upon

General Counsel
Columbia Casualty Company
333 S. Wabash Ave.
Chicago, IL 60604

and in any suit instituted against such person upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

The General Counsel is authorized and directed to accept service of process on behalf of the Insurer in any such suit and, upon the request of the Named Insured, to give a written undertaking to the Named Insured that he will enter a general appearance upon the Insurer's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or true copy thereof.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL4019XX (8-06)
Page 1
Columbia Casualty Company
Insured Name: Global Fitness Holdings, Llc

Policy No:   287494054
Endorsement No:   7
Effective Date:

© CNA All Rights Reserved.

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Package : 000050 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000050 of 000062

Filed          19-CI-01230    12/03/2019          Amy Feldman, Franklin Circuit Clerk
A true copy attest     19-CI-01230    12/03/2019          /s/Amy Feldman, Franklin Circuit Clerk

# EXHIBIT

# 2

Package:000052 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000052 of 000062

Filed          19-CI-01230    12/03/2019          Amy Feldman, Franklin Circuit Clerk
A true copy attest     19-CI-01230    12/03/2019          /s/Amy Feldman, Franklin Circuit Clerk

Filed                    19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest       19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk



1249 S. River Road, 2ⁿᵈ Fl., Cranbury, NJ 08512

Antonio A. Trotta, Esq.
Claims Consulting Director
Pro Open Brokerage
Corporate & Financial Claims
Direct Dial: 609-860-2340
Fax: 609-495-8867
email: antonio.trotta@cna.com

May 23, 2011

**VIA CERTIFIED MAIL**
John Gragg
Global Fitness Holdings, LLC
1056 Willington Way, Ste. 200
Lexington, KY 40513

|     |     |     |
| --- | --- | --- |
| Re: | Insured: | Global Fitness Holdings, LLC |
|     | Claimant: | Amber Gascho, et al. |
|     | Carrier: | Columbia Casualty Company |
|     | Policy No.: | 287494054 |
|     | Policy Period: | February 1, 2010 to September 1, 2011 |
|     | Limit of Liability: | $1,000,000 |
|     | Deductible: | $50,000 |
|     | Claim No.: | LP003419 |

Dear Mr. Gragg:

On behalf of Columbia Casualty Company (Columbia) this will confirm my receipt of an April 22, 2011 letter from Richard Bolan of Cincinnati Intermediaries, which enclosed a copy of the complaint captioned *Amber Gascho, et al. v. Global Fitness Holdings, LLC, et al.*, Common Please Court of Ohio, Franklin Co., Case No. 11CV-04-4697. The complaint is styled as a putative class action on behalf of Ohio members of Urban Fitness to whom Urban Fitness sold personal training contracts or services. The complaint asserts causes of action for fraud and alleged violations of Ohio's deceptive trade practices act for knowing and or negligent misrepresentations made by Urban Fitness' sales agents in connection with personal training contracts, and for failure to cancel personal training contracts for the nominal amounts promised during the sales presentation.

The complaint seeks certification of the class, declaratory judgment, injunctive relief, damages in excess of $25,000, and attorneys' fees and costs.

Columbia issued NetProtect 360 policy number 287494054 to Global Fitness Holdings, LLC (Global Fitness) as the Named Insured for the policy period from February 1, 2010 to September 1, 2011 (the "Policy"). The Policy provides a $1 million per claim and aggregate

Package:000053 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000053 of 000062

Filed                19-CI-01230      12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230      12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

limit of liability, subject to a $50,000 per claim deductible, under its Privacy Injury Liability Insuring Agreement[1] as follows:

**I.      LIABILITY COVERAGES**

    **A.      INSURING AGREEMENTS**

        If the Insuring Agreement has been purchased, as indicated in the Declarations and up to the applicable limit of insurance that the **Insured** shall become legally obligated to pay:

        **2.      Privacy Injury Liability**

            **A.      Privacy Injury Claims**

            as **Damages** resulting from any **Privacy Injury Claim** both first made against the **Insured** and reported to the Insurer in writing during the **Policy Period**, or any Extended Reporting Period, if applicable, alleging any **Wrongful Act** by the **Insured**, or by someone for whose **Wrongful Act** the **Insured** is legally responsible;

In the context of a Privacy Injury Claim, a Wrongful Act is defined to mean a "Privacy Injury," which is defined in pertinent part as follows:

**Privacy Injury** means:
**A.**      any act or omission with respect to **Nonpublic Personal Information:**[...]

    **2.**      in violation of any federal, state or other law or regulation, whether domestic or foreign, prohibiting unfair methods of competition, unfair or deceptive trade practices, or consumer fraud.

The Policy's definition of Nonpublic Personal Information includes "information not available to the general public from which an individual may be identified, including [...] account numbers ...". The complaint alleges that Urban Active's exclusive manner of charging the putative class was by credit and/or debit cards. Moreover, the complaint further alleges that Urban Active failed to honor plaintiffs' cancellation notices and "continued to engage in the practice of making unauthorized and unlawful charges to Plaintiff's debit card."

Such allegations conceivably fall within the definition of a "Privacy Injury," and therefore the Policy's duty to defend the claim has been triggered. To that end, Section IV. of the Policy provides Columbia the right and duty to defend the lawsuit in the name of Global Fitness, and

---

[1] The Policy also contains a Network Security Liability Insuring Agreement that is not implicated by the allegations made in the complaint. As such, Columbia will not entertain a discussion of that Insuring Agreement in this coverage position, although it reserves the right to provide an expanded analysis of that Insuring Agreement.

Filed                19-CI-01230      12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230      12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Filed              19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

enter into such settlement of the Claim as the Columbia deems necessary. Columbia, however, must obtain Global Fitness' written consent to any such settlement.

**Further to my prior telephone messages to you and Richard Bolan, I would request that you provide the undersigned with the name and contact information of the defense counsel that has been retained to represent Global Fitness' interests in this matter.**

Subject to all other terms, conditions, limitations and exclusions in the Policy, the Privacy Injury Liability Insuring Agreement restricts Columbia's indemnity obligation to the payment of defined "Damages," which is set forth as follows:

**Damages** means civil awards, settlements and judgments (including any award of pre-judgment or post-judgment interest) which the **Insureds** are legally obligated to pay as a result of a covered **Claim. Damages** shall not include:

A.    the return or restitution of the **Insured Entity's** profits, royalties, fees, expenses, taxes or costs;

B.    criminal, civil, administrative or regulatory relief, fines or penalties;

C.    any amounts for which there is no legal recourse against the **Insureds**, including those which the **Insureds** are not legally obligated to pay;

D.    injunctive or declaratory relief;

E.    matters which are uninsurable as a matter of law; or

F.    plaintiff's attorney fees or expenses associated with items **A.** through **E.** above.

Notwithstanding the foregoing paragraph, **Damages** shall include (subject to this Policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts), punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages. As used herein, "applicable law" means the law of any of the following jurisdictions:

1.    where the **Claim** seeking such **Damages** is brought or where such **Damages** are awarded or imposed;

2.    where the **Wrongful Act** giving rise to the **Claim** occurred;

3.    where the **Insureds** subject to such **Damages** are incorporated, have their principal place of business or reside; or

4.    where the Insurer is incorporated or has its principal place of business.

The complaint seeks declaratory and injunctive relief, which is specifically excluded by subpart D of the above definition, moreover most, if not all, of the plaintiffs' actual damages would be restitution of claimed improper charges specifically excluded by subpart A.   As such, Columbia reserves all rights and defenses with respect to the Policy's definition of Damages.

I would also call your attention to the following exclusions contained in Section V. of the Policy:

**V.    COMMON EXCLUSIONS**

Package:000055 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000055 of 000062

Filed              19-CI-01230    12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Whether in connection with any First Party Coverage or any Liability Coverage, the Insurer shall not be liable to pay any **Loss**:

**L.**   **Advertising**

based upon, directly or indirectly arising out of, or in any way involving:

1.   the inaccurate, inadequate or incomplete description of the price of goods, products or services or failure of goods, products or services to conform with an advertised quality or performance, or the **Insured's** cost guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded; or

2.   intentional misrepresentation in **Advertising**, false **Advertising**, unfair or deceptive business practices, provided, however, that this subsection 2applies only where:

it is established in a final adjudication by a judge, jury or arbitrator; or

there is an adverse admission by an **Insured**; or

where there is a finding of fact that the **Insured** committed the foregoing conduct; or

the **Insured** pleads no contest;

in which event the **Insured** shall reimburse the Insurer for all **Claims Expenses.**

For purposes of determining the applicability of this exclusion, the **Wrongful Act** of a natural person who is an **Insured** shall not be imputed to any other natural person who is an **Insured**;

**T.**   **Deliberate Acts**

based upon or arising out of the committing of any deliberate fraudulent or deliberate criminal act by the **Insured** or out of the commingling, misappropriation or misuse of funds if a judgment, ruling or other finding of fact in any proceeding establishes that such act, or such commingling, misappropriation or misuse was committed. If such act, or such commingling, misappropriation or misuse is so determined to have been committed, the **Insured** will reimburse the Insurer for all **Claim Expenses** paid. The Insurer will not defend any criminal act which was the subject of a criminal prosecution in which the **Insured** was found guilty, pleaded guilty, *nolo contendere* or no contest. Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

For purposes of determining the applicability of this Exclusion:

Package:000056 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000056 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Filed                     19-CI-01230      12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest        19-CI-01230      12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

1.    the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

2.    only facts pertaining to and knowledge possessed by any **Executive** shall be imputed to the **Insured Entity**;

The complaint alleges that Urban Active sales' agents repeatedly misrepresented the costs of cancelling the personal training contract in their sales discussions with the Claimants.  Such conduct may be interpreted to trigger subpart 1 of the Policy's advertising exclusions, and Columbia reserves all rights and defenses accordingly.  Moreover, Columbia reserves all rights and defenses with respect to the Policy's exclusions, including the right to demand reimbursement for any Claims Expenses under the circumstances outlined in the referenced exclusions.

The within discussion is not intended to be a comprehensive analysis of all potentially applicable provisions of the Policy, and silence as to any other applicable provision should not be deemed as a waiver thereof.

Of course, please do not hesitate to call me should you wish to discuss Columbia's coverage position further.

Very truly yours,

*Antonio Trotta*

Antonio Trotta
Claims Consulting Director


cc:    RBolan@cintermed.com

Package :000057 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000057 of 000062

Filed                     19-CI-01230      12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest        19-CI-01230      12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Filed            19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest    19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

# EXHIBIT

# 3

Package : 000058 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000058 of 000062

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |



Suzanne M. Giordano, Esq.
Management Liability, Financial
Institutions & Technology Claims
Telephone: 917-531-2020
Email: suzanne.giordano@cna.com

October 11, 2019

<u>VIA EMAIL ONLY</u> (tabpulliam@aol.com)

Ms. Tomi Anne Pulliam
Global Fitness Holdings, LLC
PO Box 23885
Lexington, KY 40523

| Insured: | Global Fitness Holdings, LLC |
| Policy: | 287494054 |
| Issuing Company: | Columbia Casualty Company |
| Policy Period: | 2/1/2010 to 9/1/2011 |
| Limit of Liability: | $1 million |
| Retention: | $50,000 per Claim |
| File No.: | LP003419 |

Dear Ms. Pulliam,

As you know, Columbia Casualty Company ("Columbia") issued Policy number 287494054 to Global Fitness Holdings, LLC ("Global Fitness") for the **Policy Period** February 1, 2010 to September 1, 2011 (the "Policy").  The purpose of this letter to provide you with Columbia's coverage position under the Policy for additional bills submitted by your broker, Debbie Morris of J. Smith Lanier & Co., purportedly associated with the lawsuit captioned *Amber Gascho, et al. v. Global Fitness Holdings, LLC*, initially filed in the Common Pleas Court of Ohio, Franklin County, Case No. 11CV-04-4697 and subsequently removed to the United States District Court for the Southern District of Ohio, Case No. 2:11-cv-436 (the "*Gascho* Action").  Ms. Morris, on behalf of Global Fitness, forwarded these additional bills to Columbia via e-mails sent to me on July 24, 2019 and August 27, 2019.

<u>Columbia's Coverage Position for the Additional Bills</u>

We understand that Global Fitness is seeking coverage for fees incurred by the law firm of Greenbaum Doll & McDonald (later renamed Bingham Greenbaum Doll, LLP)

| Filed | 19-CI-01230 | 12/03/2019 | Amy Feldman, Franklin Circuit Clerk |
| A true copy attest | 19-CI-01230 | 12/03/2019 | /s/Amy Feldman, Franklin Circuit Clerk |

Filed                       19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest          19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Ms. Tomi Anne Pulliam
LP003419
Page 2 of 4

("Greenbaum"), purportedly incurred in the defense of the *Gascho* Action. Specifically, on July 24, 2019, Ms. Morris provided copies of the following invoices:

| Invoice No. | Invoice Date | Description |
|---|---|---|
| 4226791 | November 28, 2011 | "Coordination of Ohio Litigation and BBB Matters" |
| 4227890 | December 22, 2011 | "Coordination of Ohio Litigation and BBB Matters" |
| 4227895 | December 22, 2011 | "Adv. Hearon" |
| 4227917 | December 23, 2011 | "Adv. Gascho" |
| 4275474 | September 26, 2013 | "Adv. Gascho" |
| 4286957 | January 27, 2014 | "Adv. Gascho" |
| 4321390 | January 31, 2015 | "Adv. Gascho" |
| 4363056 | June 22, 2016 | "Adv. Gascho" |
| 4379378 | January 23, 2017 | "Adv. Gascho" |

By way of background, the *Gascho* Action was commenced against Global Fitness on or about April 13, 2011 and notice was thereafter provided to Columbia on April 22, 2011. As you know, in a coverage letter dated May 23, 2011, Columbia agreed to defend the *Gascho Action* in the name of Global Fitness as a **Privacy Injury Claim** pursuant to a full reservation of rights under the Policy. The law firm of Jones Day was initially retained to represent Global Fitness in the *Gascho* Action. In a July 2011 e-mail, Mr. Job Turner from Greenbaum forwarded to Columbia the contact information for the attorney at Jones Day who would primarily be handling the *Gascho* matter, Mr. Cole Doug. In or around September 2011, the law firm of Bailey Cavalieri replaced Jones Day as defense counsel and remained as such until the *Gascho* Action was fully resolved pursuant to a Settlement Agreement that was finalized on February 21, 2017.

Pursuant to Section IV.A. of the Policy, Columbia had the "right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **Claim**." Further, subject to all its terms, conditions, limitations and exclusions, the Insuring Agreements in Section I.A. of the Policy, including the Insuring Agreement for **Privacy Injury Claim**, provide in pertinent part that, subject to the limits of insurance and in excess of any deductible, Columbia will pay all **Claim Expenses** in connection with any **Claim**. "**Claim Expenses**" is defined in Section X. of the Policy to mean, in pertinent part, fees charged by attorneys designated by Columbia or by the **Insured Entity** with Columbia's advance written consent.

Filed                       19-CI-01230    12/03/2019        Amy Feldman, Franklin Circuit Clerk
A true copy attest          19-CI-01230    12/03/2019        /s/Amy Feldman, Franklin Circuit Clerk

Package : 000060 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000060 of 000062

Filed                19-CI-01230   12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest   19-CI-01230   12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Ms. Tomi Anne Pulliam
LP003419
Page 3 of 4

In a September 2011 e-mail from the Bailey Cavalieri firm to Columbia, attorney Dan Cvetanovich refers to the Greenbaum firm as "outside general counsel" to Global Fitness. In accordance with its defense obligations under the Policy, Columbia processed invoices from both the Jones Day and Bailey Cavalieri firms for their work in connection with their defense of Global Fitness in the *Gascho* Action.

As noted, **"Claim Expenses"** is defined in Section X. of the Policy to mean, in pertinent part, "fees charged by attorneys designated [Columbia] or by the **Insured Entity** with [Columbia's] advance written consent."

Based upon the foregoing and a review of the file, Columbia did not consent to the retention of Greenbaum (a third law firm) to defend the *Gascho* Action. In addition, it appears that Greenbaum was not acting as defense counsel, but as personal counsel to Global Fitness. It can be logically presumed that the "Adv. Gascho" description on certain of the invoices identified above refers to the advice that the Greenbaum firm gave to Global Fitness in connection with the *Gascho* Action. A review of the invoices themselves supports this. Greenbaum participated in calls with defense counsel to discuss strategy and coordinated responses to discovery requests, as an internal counsel would do for a company involved in a litigation. It appears from the descriptions on the other invoices that the Greenbaum firm was coordinating a number of litigations pending in Ohio against Global Fitness. It is not clear whether the *Gascho* Action was part of the "Ohio Litigations." It is further unclear what the "'BBB' Matters" in the Description were and whether they encompassed *Gascho*. Regardless of whether *Gascho* was a part of these matters, the work was not performed in the capacity of any defense counsel designated by Columbia or otherwise designated by Global Fitness with Columbia's advance written consent.

Finally, the pleadings filed in *Gascho* and the corresponding docket all reference Jones Day or the Bailey Cavalieri firm as the firms representing Global Fitness as counsel of record, not Greenbaum.

For these reasons, the fees generated by the Greenbaum firm do not constitute **Claim Expenses** under the Policy and, therefore, coverage for such fees is not afforded under the Policy.

In addition to the Greenbaum bills, Ms. Morris also forwarded to Columbia on August 27, 2019 a document that contains a series of invoices from Kroll Ontrack to Global Fitness from the period August 2011 to September 2013. We understand that Global Fitness is seeking coverage for these invoices, totaling $855,405.60, in connection with the defense of the *Gascho* Action. The invoices contain very little detail, instead simply referencing "Discovery services." There is nothing on the invoices that connects the work to the *Gascho* litigation at all. Even if the invoices could be connected to

Package:000061 of 000062

Presiding Judge: HON. PHILLIP J. SHEPHERD (648260)

Package : 000061 of 000062

Filed                          19-CI-01230      12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest      19-CI-01230      12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk

Ms. Tomi Anne Pulliam
LP003419
Page 4 of 4

*Gascho*, in whole or in part, the lack of detail contained therein and the passage of time prevents Columbia from being able to evaluate whether and to what extent they were, in fact, "other reasonable and necessary fees, costs and expenses" incurred by Columbia in the defense of the *Gascho* Action. Accordingly, Columbia is not obligated to provide coverage under the Policy for these invoices as **Claim Expenses** in connection with the *Gascho* Action.

* * *

Please note that the coverage position set forth in this correspondence is based on the information available to Columbia to date. Columbia continues to fully reserve all of its rights with respect to this matter including, but not limited to, the right to supplement or modify its position and to assert additional coverage defenses and or legal defenses, such as the applicable statute of limitations. Neither this correspondence nor any other act on behalf of Columbia should be construed as waiving any such rights.

If you have any questions or comments regarding the issues discussed above or any other aspect of this matter, please do not hesitate to contact me.

Very truly yours,

*Suzanne M. Giordano*

Suzanne M. Giordano, Esq.

cc:     Debbie Morris
        dmorris@jsmithlanier.com

Filed                          19-CI-01230      12/03/2019      Amy Feldman, Franklin Circuit Clerk
A true copy attest      19-CI-01230      12/03/2019      /s/Amy Feldman, Franklin Circuit Clerk